

# In the Missouri Court of Appeals

## Eastern District

### DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED100328 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Hon. Thea A. Sherry |
| MICHAEL R. JACKSON, | ) | |
| | ) | Filed: |
| Appellant. | ) | August 26, 2014 |

Michael Jackson ("Defendant") appeals from the judgment upon his conviction of two counts of first-degree statutory sodomy, Section 566.062. Defendant contends the trial court erred in: (1) failing to grant Defendant's motion for judgment of acquittal at the close of the State's case because the State failed to present a submissible case; (2) allowing the transcript of the Child Advocacy Center video into evidence; and (3) excluding Defendant's Exhibit B from the evidence. We affirm.

The State filed a complaint charging Defendant with eight counts of first-degree statutory sodomy. The victim testified at trial that Defendant, her uncle, touched her vagina with his fingers and a vibrator and would also insert his fingers in her vagina on multiple occasions beginning when she was in fourth grade. The victim also testified she did not tell anyone because she thought she would be in trouble. However, after a few years, when the victim was in ninth grade, she eventually told her friends about the touching, which was still occurring.

Thereafter she also told her mother about the situation. The victim then gave a statement at the police station and was also interviewed by Connilee Christie at the Child Advocacy Center.

Subsequently, the State filed a notice of its intent to use the child victim's statements under Section 491.075. Defendant filed an objection to the admission of hearsay statements pursuant to Section 491.075.

Before trial, the trial court held a Section 491.075 hearing. At the hearing, Officer Steve Michael testified the victim came to the police station where he interviewed her and she told him Defendant had penetrated her vagina with his fingers numerous times while she tried to sleep. The victim's mother also testified how the victim told her about Defendant touching her vagina. Christie also testified about the interview she conducted with the victim, wherein the victim told her how Defendant touched her vagina several times, beginning when she was nine years old and continuing until she was thirteen years old. Christie's interview was recorded on a DVD, which was provided to the court. The trial court found the State would be permitted to introduce the statements made by the victim to Officer Michael, her mother, and Christie.

The State then filed an amended notice of its intent to use the child victim's statements under Section 491.075. The trial court subsequently held a second Section 491.075 hearing, allowing the State to present the testimony of the victim's friends from middle school. They testified the victim told them about Defendant touching her vagina while she was trying to sleep. The trial court granted the amended motion, finding statements made by the victim to her friends were admissible.

At trial, Defendant filed a motion for judgment of acquittal at the close of the State's evidence and at the close of all the evidence. Both of these motions were denied. The jury

found Defendant guilty of two counts of first-degree statutory sodomy and not guilty of two counts.[1]

Defendant filed a motion for judgment of acquittal or, in the alternative, for a new trial. This motion was denied. Defendant was sentenced to fifteen years of imprisonment on one count and a concurrent ten years on the other. This appeal follows.

In his first point, Defendant argues the trial court erred in failing to grant Defendant's motion for judgment of acquittal at the close of the State's case because the State failed to present a submissible case in that the testimony of the victim was contradictory and in conflict with physical facts. As a result, Defendant contends the victim's testimony required corroboration, which was never presented. We disagree.

We review the denial of a motion for judgment of acquittal to determine if the State made a submissible case by presenting sufficient evidence. State v. Hill, 408 S.W.3d 820, 822 (Mo. App. E.D. 2013). When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, giving the State the benefit of all reasonable inferences. Id. Our review is limited to determining whether there is sufficient evidence from which a reasonable juror could find the defendant guilty beyond a reasonable doubt. Id. We accept as true all evidence favorable to the State and disregard all evidence to the contrary. Id. Reasonable inferences can be drawn from both direct and circumstantial evidence. Id. Circumstantial evidence alone can be sufficient to support a conviction. Id. It is for the finder of fact to determine the reliability, credibility, and weight of witness testimony. Id.

The general rule is that a criminal conviction may be sustained by the victim's testimony alone, even if that testimony is uncorroborated. State v. Cook, 339 S.W.3d 523, 529 (Mo. App. E.D. 2011). An exception, called the "corroboration rule," previously came into play in Missouri

---

[1] The State dismissed the other four counts.

in the particular context of sexual offense cases.  Id.  However, the Missouri Supreme Court recently abolished the corroboration rule.  State v. Porter, 2014 WL 3729864 (Mo. Banc 2014).  Thus, our review is to be guided by the well-established standard of review for challenges to the sufficiency of the evidence.  Id.

Defendant contends there are numerous conflicts between the victim's testimony at trial and the victim's out-of-court statements that were admitted into evidence at trial.

The victim first divulged the abuse to her friends.  The victim told them Defendant fingered her at his house while she was sleeping there.  The victim's friends encouraged her to tell her mother so she wrote her mother a note, which stated "Mom, [Defendant] touched me in my vagina."  The victim's mother asked her if it was true later and the victim said it was.  Thereafter, the victim's mother took her to the police station where the victim talked to Officer Michael.  The victim told Officer Michael the abuse happened at Defendant's house when she was sleeping.  The victim also told Officer Michael the abuse began when she was nine years old and continued for about a four year period.  Next the victim was interviewed by Christie at the Child Advocacy Center.  During that interview, the victim described in detail two instances for which Defendant was eventually convicted.

The first instance, the victim testified, occurred when she was suspended from school in fourth grade and was sleeping at Defendant's house.  The victim stated Defendant pulled down her pants and began touching her vagina.  The victim was in the same waterbed as her cousin, during this incident.  The victim stated she woke up, pulled up her pants, and went to the bathroom.  When she returned, she tried to go back to sleep, but she stated, Defendant kept trying to touch her, which caused her to kick Defendant, who then stopped.  The victim's cousin never woke up during this incident.

4

The other instance, about which the victim testified in detail, involved Defendant touching her after watching a movie. First, the victim stated Defendant did not touch her vagina, but just rubbed her leg. However, later during the Child Advocacy Center interview, the victim testified Defendant touched her vagina with his hands and with a vibrator while she was in his bed. At trial, the victim testified her cousin was asleep in bed between her and Defendant, but Defendant turned himself around and touch her from the bottom of the bed. Again, the victim's cousin was not awakened during this incident.

Defendant argues each time the victim made allegations of abuse further details emerged. Defendant also emphasizes the fact that the victim never mentioned that one of the incidents she described in detail occurred on a waterbed. Defendant contends this fact makes her story less believable because it decreases the likelihood that the victim's cousin, who was on the same bed at the time, could have slept through the incidents. Moreover, regarding the other incident the victim described in detail, Defendant argues she failed to mention her cousin was sleeping in between the victim and Defendant on a bed. Defendant contends the fact that the victim's cousin was in between the victim and Defendant makes it less likely that she would have slept through the incident.

Defendant notes the victim gave differing answers when she was asked how many times Defendant touched her vagina. The victim stated it happened a "bunch of times" and over fifteen times. Then at trial, when Defendant's counsel was trying to get a more precise number, the victim stated it was more than 21, but that it felt "like a thousand." Defendant also claims the victim contradicted her earlier statement when she testified at trial that her cousin was not present every time the abuse occurred.

5

Lastly, Defendant calls into question the victim's reaction to the abuse. Defendant notes she never tried to wake anyone up to catch Defendant in the act. Further, Defendant notes she contacted him when she was worried about her sister, even though he had been abusing her for years. Moreover, Defendant notes the victim was suspended in fourth grade for taking a pocket knife to school to protect herself from a sex offender who lived nearby. Defendant notes such behavior is not consistent with someone who was sexually abused repeatedly for four years before telling anyone. In addition, the victim spent a lot of time at Defendant's house and never said she did not want to go there and never acted differently after going there; the victim also went on a trip with Defendant, and his family.

We first note it is not surprising that the victim's story evolved to become more detailed because each person she talked to asked progressively more detailed and thorough questions. Further, the testimony of young victims about sensitive matters commonly contains some variations, contradictions, or lapses in memory. State v. Sprinkle, 122 S.W.3d 652, 667 (Mo. App. W.D. 2003). Further, we note the jury resolved these alleged inconsistencies in favor of the victim. Because we view the evidence in the light most favorable to the State, we find there was sufficient evidence Defendant committed two counts of first-degree statutory sodomy. Therefore, the trial court did not err in failing to grant Defendant's motion for judgment of acquittal at the close of the State's case. Point denied.

In his second point, Defendant argues the trial court erred and abused its discretion in allowing the transcript of the Child Advocacy Center video into evidence for the jury to read while watching the Child Advocacy Center video because the transcript was hearsay evidence that was not subject to the requirements of Section 491.075 and was never properly authenticated. We disagree.

6

The trial court has broad discretion regarding the admission or exclusion of evidence at trial, and its discretion will not be disturbed without a clear abuse of discretion. State v. Eisele, 414 S.W.3d 507, 514 (Mo. App. E.D. 2013). There is an abuse of discretion only if the trial court's ruling is against the logic of the circumstances or appears unreasonable or arbitrary. Id. The trial court did not abuse its discretion if reasonable persons could disagree about the propriety of its decision. Id. Additionally, on direct appeal, we review for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. State v. Sprofera, 372 S.W.3d 17, 19 (Mo. App. W.D. 2012).

Section 491.075.1(1) provides:

A statement made by a child under the age of fourteen, or a vulnerable person, relating to an offense under chapter 565, 566, 568 or 573, performed by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:

(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2) (a) The child or vulnerable person testifies at the proceedings; or . . ..

The victim was interviewed at the Child Advocacy Center regarding her allegations against Defendant. A DVD recording of the interview was made as well as a transcript. The transcript was a verbatim copy of the victim's interview in the DVD recording of the Child Advocacy Center interview. Defendant contends both the DVD recording and the transcript were hearsay offered for the truth of the matter asserted and should not have been admitted absent a specific finding after a hearing, as contemplated in Section 491.075.1(1). While the DVD recording was offered and admitted properly at a Section 491.075.1(1) hearing, the

7

transcript was never mentioned or offered. Moreover, a second hearing was held where further hearsay statements were offered, but again, the transcript was never mentioned.

At trial, there was a discussion about the use of the transcript. Defendant's counsel objected because: (1) the jury needed to be able to observe the demeanor of the victim during the video, which they could not adequately do while reading a transcript; (2) the transcript was never introduced at a Section 491.075.1(1) hearing; and (3) the transcript does not capture other things the victim did during the interview. The trial court agreed that in the future it would be better to introduce the transcript at the Section 491.075.1(1) hearing, but the trial court overruled Defendant's counsel's objections. The trial court then allowed the jury to have the transcript while the DVD recording was played for the jury during the forensic interviewer's testimony. When the trial court passed out the transcipts, it read instruction 3, which provided:

> Exhibit 4, the video recording of the alleged conversation between [the victim] and Connilee Christie has been admitted into evidence and will now be played for you.
> A transcript of the video recording is being provided to you to read as you listen to the video recording. This transcript is not evidence and is being provided to you to assist you in following the video recording.
> You are instructed, however, that the video recording, and not the transcript, is the evidence. Should there be any discrepancies between the video recording and the transcript, you are to be guided by what you hear on the video recording.

In this case, all statements in the transcript were admitted through the video of the interview, which was evaluated in a Section 491.075.1(1) hearing. Defendant admits the transcript was a word for word recounting of the conversation during the interview. Thus, everything in the transcript was presented at the Section 491.075.1(1) hearing. Further, the trial court instructed the jury that the recording was evidence while the transcript was not. As a result, we find the trial court did not abuse its discretion in admitting the transcript for the limited purpose of assisting the jury in following the video recording. Moreover, while Defendant

alleges the jury only read the transcript and ignored the most important evidence in the case including the victim's inaudible responses, demeanor, and actions during the interview, Defendant fails to point to anything in the record to support this claim. Defense counsel's and Defendant's bare assertions of fact do not prove themselves and are not evidence of the asserted facts. State v. Smith, 389 S.W.3d 194, 215 (Mo. App. S.D. 2012). We conclude Defendant has failed to show he was prejudiced by the jury's use of the transcript.

Therefore, the trial court did not err or abuse its discretion in allowing the transcript of the Child Advocacy Center video into evidence. Point denied.

In his third point, Defendant argues the trial court erred and abused its discretion in excluding Defendant's Exhibit B, which contained copies of text messages between the victim and Defendant, because it was not hearsay and was relevant to his defense. We disagree.

At trial, the victim was questioned about whether she had texted Defendant asking him to pick up her sister because her dad was really angry with her sister. The victim testified she remembered texting Defendant, but did not remember his response. Subsequently, the victim was given a copy of the text messages so she could refresh her memory. Then Defendant's counsel began asking her about the content of the messages. The State objected based on hearsay. The trial court excused the jury. With the jury out of the room, the State contended it was hearsay to have the victim testify as to what Defendant texted. Defendant's counsel argued it was hearsay, but was admissible because it was probative of Defendant's state of mind and what he was going to do in the future. The trial court sustained the State's objection. However, Defendant's counsel was able to elicit that Defendant went and picked up the victim's sister.

Defendant contends Exhibit B, which contained a transcript of the text messages, should have been admitted and that it was prejudicial not to admit Exhibit B. As noted above, the trial

court has broad discretion to admit or exclude evidence. <u>Eisele</u>, 414 S.W.3d at 514. Further, we note a trial court abuses its discretion when the exclusion of the evidence is so prejudicial that Defendant is denied a fair trial. <u>State v. Thompson</u>, 361 S.W.3d 46, 48 (Mo. App. W.D. 2011). Trial court error is prejudicial if there is a reasonable probability that the error was outcome-determinative. <u>Eisele</u>, 414 S.W.3d at 517.

The actual transcript of the text messages shows that the victim initiated the conversation by asking if Defendant was talking to her sister. When Defendant said no, the victim said he should. At that point, Defendant's conversation with the victim ended and Defendant began talking with her sister. It was actually the victim's sister that asked Defendant to come pick her up.

As noted above, after the State's objection was sustained, Defendant's counsel was able to elicit that Defendant went to pick up the victim's sister. Moreover, Defendant's counsel emphasized that the victim was worried about her sister's safety and the person she contacted to rescue her was Defendant, who she alleged had been molesting her for three years at that point.

Admission of Exhibit B would have merely been cumulative to the extensive questioning of the victim and Defendant about the content of the text messages. Thus, Defendant was not prejudiced by the exclusion of Exhibit B.

Further, we note the bulk of Exhibit B was comprised of text messages between Defendant and the victim's sister, and, as such, constituted hearsay. Moreover, the victim's sister, not the victim, asked Defendant to pick her up. Thus, the bulk of Exhibit B was not probative of the victim's state of mind.

It is true that the victim initiated contact with Defendant and told him he should speak to Angela. However, Defendant's counsel was able to question and emphasize that the victim was

10

worried about her sister's safety and the person she contacted to rescue her was Defendant, who she alleged had been molesting her for three years at that point. This is the main argument Defendant's counsel sought to make with Exhibit B. We find the trial court's exclusion of Exhibit B did not prevent the Defendant's counsel from making this point.

Therefore, we find the trial court did not err or abuse its discretion in excluding Defendant's Exhibit B. Point denied.

The judgment of the trial court is affirmed.

ROBERT G. DOWD, JR., Judge

Kurt S. Odenwald, P.J. and
Gary M. Gaertner, Jr., J., concur.

11