

# Missouri Court of Appeals

## Southern District

## Division Two

STATE OF MISSOURI,                           )
                                             )
    Plaintiff-Respondent,        )
                                             )
v.                                           )      No. SD35873
                                             )
GABRIEL NICHOLAS WOOD,                       )      **Filed: March 10, 2020**
                                             )
    Defendant-Appellant.          )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Calvin R. Holden

**AFFIRMED**

The trial court, after a bench trial, convicted Gabriel Nicholas Wood ("Defendant") of first-degree burglary, second-degree child molestation, and third-degree assault. *See* sections 569.160, 566.068, and 565.070.[1] In this appeal, Defendant claims the evidence adduced at his trial was insufficient to support his convictions. Finding no merit in that claim, we affirm.

### Standard of Review

We review the sufficiency of the evidence in a bench trial of a criminal case to determine "whether the State presented sufficient evidence from which a trier of fact could have reasonably found the defendant guilty; and in so doing, we examine the evidence and inferences in the light most favorable to the verdict, ignoring all contrary evidence and inferences." *State v. Brown*, 360 S.W.3d 919, 922 (Mo. App. W.D. 2012) (citing *State v. Johnson*, 244 S.W.3d 144, 152 (Mo. banc 2008)). We will not, however, "supply missing evidence, or give the State the benefit of unreasonable,

---

[1] Unless otherwise noted, all statutory citations are to RSMo Cum. Supp. 2015.

1

speculative, or forced inferences." *State v. Brown*, 457 S.W.3d 772, 779 (Mo. App. E.D. 2014).

*State v. Allen*, 508 S.W.3d 181, 186 (Mo. App. E.D. 2017). Our recitation of the relevant evidence is presented in accordance with these principles.

## The Evidence

Defendant and L.S. were dating, and they had lived together for awhile in L.S.'s home. At the time of the events at issue in this case, Defendant had moved out, but the couple had continued dating. After Defendant moved out, he was "supposed to get prior permission" from L.S. to come to her home.

L.S. is the mother of T.O. One September evening in 2015, T.O. had her 14-year-old friend ("Victim") over to spend the night. T.O. and Victim were watching television in the living room when L.S. went to bed. When L.S. went to bed, she and the girls were the only people in the home, and L.S. was not expecting anyone else to be there. T.O. and Victim went to sleep on the couches in the living room, and Defendant was not in the home at that time.

Victim awoke in the morning to Defendant coming through the front door. After Victim rolled over, intending to go back to sleep, the next thing she remembered was feeling Defendant touch her breast and squeeze her buttocks. After touching Victim, Defendant went to L.S.'s room and made plans to spend time with her after he got off work.

Defendant then left, and T.O. and Victim told L.S. what Defendant had done to Victim. L.S. called Defendant and told him, "You are never allowed to come over to my house again[.]" Defendant then asked L.S. if she wanted her house key back. L.S. had provided Defendant with a key at some point, but she did not recall that he still had it. Defendant was not supposed to have a key "because he had to have permission to come and

2

go." Defendant expressed remorse to L.S., admitted that he had touched Victim, and said that he needed help.

## Analysis

*Point 1 – Evidence of Unlawfully Remaining*

Point 1 claims "that the [S]tate's evidence was insufficient to sustain the trial court's finding of guilt on burglary in the first degree, since the [S]tate's evidence failed to establish beyond a reasonable doubt that [Defendant] remained in the home with the intent to commit the crime of child molestation." Specifically, Defendant claims that because L.S. did not affirmatively ask him to leave, but rather "spoke with [him] politely," he did not unlawfully remain in her home. We disagree.

Under section 569.160,

1. A person commits the crime of burglary in the first degree if he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein, and when in effecting entry or while in the building or inhabitable structure or in immediate flight therefrom, he or another participant in the crime:
(1) Is armed with explosives or a deadly weapon or;
(2) Causes or threatens immediate physical injury to any person who is not a participant in the crime; or
(3) There is present in the structure another person who is not a participant in the crime.

In pertinent part, section 569.010(8) provides that "a person 'enters unlawfully or remains unlawfully' in or upon premises when he is not licensed or privileged to do so." The terms "license" and "privilege" were addressed as follows in ***State v. Stewart***, 560 S.W.3d 531, 535-36 (Mo. banc 2018).

A "license" is defined generally as "permission to act." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1304 (2002). A "privilege" is defined generally as "a right or immunity granted as a peculiar benefit, advantage or favor." *Id.* at 1805. Consistent with these definitions, the common law provides a "license is a privilege to enter certain premises

3

for a stated purpose" and "may be revoked at the will of licensor." *Riverside-Quindaro Bend Levee Dist., Platte Cty., Mo. v. Mo. Am. Water Co.*, 117 S.W.3d 140, 149 (Mo. App. 2003). Therefore, Stewart's license or privilege to remain in the residence was based on whether he had permission or a right to do so.

*Stewart* held that the defendant had committed a burglary by knowingly remaining unlawfully in a residence for the purpose of committing an assault even though he had initially entered it lawfully. *Id.* at 536. Stewart had moved out of the residence and returned to the property only at night to sleep in a camper located elsewhere on the property. *Id.* The court found that "a reasonable juror could find Stewart exceeded the scope of any limited license and privilege to remain in the residence when, after delivering firewood to the basement, he went upstairs, twice ignored T.S.'s demands that he leave and, instead, fired a gun and threatened to kill her." *Id.*

Defendant acknowledges that "[k]nowingly remaining unlawfully, as defined in burglary cases, occurs when a person enters the premises *lawfully* but his license to be there expires or is exceeded." He then attempts to distinguish his case from *Stewart* by arguing that, because L.S. did not ask him to leave, he could not be found guilty of burglary. We reject this argument and find the opposite to be true.

Here, unlike the situation in *Stewart*, Defendant did *not* enter L.S.'s home with permission to do so. L.S. testified that Defendant had moved out of her home, and he was no longer permitted to come and go as he pleased. Instead, Defendant "was supposed to get prior permission, and [she] was supposed to have prior knowledge for him to come over." L.S. had "express[ed] that rule and requirement to [D]efendant . . . [s]everal times[.]"

Because L.S. had revoked Defendant's license to be inside her home without her advance permission, and no such permission was given, every moment Defendant remained

4

in L.S.'s home was unlawful, and it would remain so unless and until L.S. affirmatively gave Defendant permission to remain.[2] No such permission was granted before Defendant decided to molest and assault Victim.

In addition to proving that Defendant remained in the home unlawfully, the State was also required to prove that Defendant intended to commit a crime therein. *See* section 569.160. "Intent to commit a crime is most often proved by circumstantial evidence and it may be inferred from surrounding facts or the act itself." **State v. Dixon**, 495 S.W.3d 812, 820 (Mo. App. S.D. 2016) (quoting **State v. Wrice**, 389 S.W.3d 738, 740 (Mo. App. E.D. 2013)).

Evidence the trial court was entitled to credit was that Defendant entered the home without advance permission while all of its occupants were asleep. Defendant covered the sleeping Victim with a blanket, squeezed her breast, and then pretended to be asleep. He next squeezed Victim's buttocks and put the blanket over his face. Defendant later told L.S. that "he just couldn't help himself[.]"

This evidence was sufficient to allow a rational fact-finder to find, beyond a reasonable doubt, that Defendant had unlawfully remained in the home with an intent to commit a crime. Point 1 is denied.

*Point 2 – Insufficient Evidence of Child Molestation and Assault*

Defendant's second point claims that the State's evidence was insufficient to convict him of child molestation and assault because Victim did not actually see Defendant touch her. "An essential element of any crime is that the person charged with an offense is the

---

[2] Although burglary is routinely charged in the alternative -- that the defendant either entered unlawfully or remained unlawfully -- one can see why the prosecutor would charge only remaining unlawfully here based upon a reasonable assumption that Defendant would not likely have known that Victim would be present in the home when he entered it.

person who committed the offense." **State v. Ryan**, 576 S.W.3d 326, 332 (Mo. App. S.D. 2019). "It is well-established that 'a criminal conviction may be sustained by the victim's testimony alone, even if that testimony is uncorroborated.'" **Id.** (quoting **State v. Jackson**, 439 S.W.3d 276, 278 (Mo. App. E.D. 2014)).

Here, Victim testified that she awoke at L.S.'s house in the morning and saw Defendant, who had not been there when she fell asleep. Approximately five minutes later, Victim felt someone put a blanket on her and touch and squeeze her breast. She then sat up and saw Defendant lying on the floor, pretending to be asleep. Victim rolled over, felt the blanket being pulled off of her, and then felt someone squeezing her buttocks. Defendant was on the floor within arms' reach of Victim, and Defendant had a blanket over his face. The only other person in the room was Victim's sleeping friend, T.O. Finally, Defendant himself corroborated Victim's testimony when he later told L.S. that "he needed help" -- "he just couldn't help himself and proceeded to pat-down and -- and touch [Victim's] breasts."

This evidence was sufficient to allow a rational fact-finder to find, beyond a reasonable doubt, that Defendant was the person who had assaulted and molested Victim. Point 2 is also denied, and the judgment of the trial court is affirmed.


DON E. BURRELL, J. – OPINION AUTHOR

DANIEL E. SCOTT, P.J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS