

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED110259 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| v. | ) | Cause No. 1722-CR02311-01 |
| | ) | |
| CASEY LOWERY, | ) | Honorable Scott A. Millikan |
| | ) | |
| Appellant. | ) | Filed: September 20, 2022 |

### Introduction

A jury found Defendant-Appellant Casey Lowery ("Lowery") guilty beyond a reasonable doubt of murder in the second degree, assault in the first degree, and two counts of armed criminal action. In his sole point on appeal, Lowery challenges the sufficiency of the evidence to prove him guilty of murder in the second degree and the associated armed criminal action. We affirm.

### Facts and Procedural History

A grand jury charged Lowery in a four-count indictment. Counts I and II of the indictment charged Lowery with murder in the first degree and armed criminal action for the fatal shooting of Keiva Jones ("Jones"). Counts III and IV of the indictment charged Lowery with assault in the first degree and armed criminal action for the nearly contemporaneous shooting of Corvell Wraggs ("Wraggs"). After a four-day trial, a jury found Lowery guilty of the lesser-included offense of murder in the second degree, assault in the first degree, and both counts of armed criminal action.

Viewed in the light most favorable to the jury's verdict, *see State v. Bowen*, 523 S.W.3d 483, 487 (Mo. App. E.D. 2017), the evidence adduced at trial is as follows.

Corvell Wraggs lived at 1147 Canaan Avenue in the City of St. Louis. He is the father of ten children, one of whom is Arrivell Wraggs ("Arrivell"). In May 2017, Wraggs had lived at 1147 Canaan for 16 years, long enough to be familiar with the people in his neighborhood. Wraggs's girlfriend, Keiva Jones, had lived with him at that address for ten years.

On May 25, 2017, Wraggs scheduled an appointment with AmerenUE to fix a street light in his alley. The lineman scheduled to fix the street light, William Hardesty ("Hardesty"), arrived in the alley in his bucket truck. Wraggs went out to meet Hardesty in the alley. Though Jones was home that day, she did not join Wraggs and Hardesty in the alley.

Wraggs informed Hardesty that the street light that needed to be fixed was farther down the alley. Defendant Casey Lowery also showed up in the alley. Wraggs knew Lowery from seeing him around the neighborhood but did not know him by name. Though Hardesty had never met Lowery before, Lowery approached Hardesty, shook his hand, and gave him a "chest bump." Hardesty asked Lowery, "How's it going?" but Lowery did not respond.

Lowery and Wraggs then walked down the alley together while engaged in conversation. Hardesty followed them in the bucket truck. Lowery asked Wraggs why he brought the police there. Wraggs denied Hardesty was the police. He explained to Lowery that Hardesty was "the UE man" while directing Hardesty to the light that needed to be fixed.

Suddenly, Lowery shot a firearm up in the air, shooting out the street light. Hardesty chided Lowery that he did not have to shoot out the street lights. Lowery then turned the firearm on Wraggs and shot him in the head at close range. Wraggs was able to run a short distance before falling to the ground and watching Lowery leave the alley.

After witnessing the shooting, Hardesty fled in the bucket truck. He saw Wraggs's son, Arrivell, on Wraggs's front lawn and told him someone had been shot in the alley. Hardesty then drove to a nearby Imo's Pizza parking lot, where he attempted to call Wraggs's phone. Lowery followed Hardesty to the Imo's Pizza lot and demanded Hardesty's phone. Lowery opened the passenger-side door of the bucket truck, took Hardesty's phone, wiped off the truck cab window, and left on foot.

Meanwhile, at 1147 Canaan, Arrivell went to the front door of the house. Wraggs's girlfriend, Jones, answered the door. Arrivell informed Jones that he was told "that someone was getting shot in the alley and the guy wasn't sure if it was dad." Jones went back inside to get dressed.

Arrivell and his sister went to the alley where they saw Wraggs next to a light with his face next to a brick. They spent approximately one minute with Wraggs before returning to the front sidewalk because the alley was "a fresh crime scene." Neither Arrivell nor his sister touched Wraggs or said anything to him.

Shortly thereafter, Arrivell knocked on the front door of 1147 Canaan again, but Jones did not answer. She had gone to see where Wraggs was. While continuing to knock on the door and trying to contact the police, Arrivell heard a nearby gunshot. In the alley, Wraggs, who had survived being shot in the head by Lowery, saw Lowery shoot Jones. Arrivell then saw a man run out of the alley. The man, generally meeting Lowery's description, ran to an old, rusty, blue pickup truck and drove away. Arrivell and his sister tried to follow the blue pickup truck in her car, but they could not keep up with it.

Upon arriving in the alley, police officers found Wraggs unconscious with a puddle of blood around his head. Nearby, in a vacant lot on the alley, Jones was found dead from a gunshot wound to the head. The officers also discovered Hardesty's phone in the alley.

At the police station, Hardesty was shown a photo array, but was unable to identify the shooter and did not want to accuse someone "[w]ith a shadow of a doubt." Later, Hardesty saw Lowery's picture on the news. He knew "that's the guy without question . . .. No doubt."

Wraggs consistently identified Lowery as his neighbor of ten years and as the shooter, including a positive identification in a photo array.

Days later, police learned that Lowery was no longer in St. Louis but was in custody in Selmer, Tennessee. In an interview with police, Lowery confirmed that he lived on Howell Street, which shares the alley with Canaan Avenue, he owned a blue pickup truck meeting the description of the truck that fled the murder scene, and he owned a gun. Lowery identified Wraggs and Jones as people from his neighborhood.

At trial, both Hardesty and Wraggs identified Lowery in open court. The State inquired of Hardesty, "[I]s there any doubt in your mind remaining that this defendant is the person who shot Corvell Wraggs? . . . Are you positive this is the person who shot [him]?" Hardesty responded, "I have no doubt."

The jury convicted Lowery on Counts I and II of murder in the second degree and armed criminal action for the fatal shooting of Keiva Jones. The jury also convicted Lowery on Counts III and IV of assault in the first degree and armed criminal action for the shooting of Corvell Wraggs.

Lowery's counsel filed motions for judgment of acquittal at the conclusion of the State's evidence and at the conclusion of all the evidence. After trial, counsel also filed a motion for

4

judgment of acquittal notwithstanding the verdict and a motion for new trial. Lowery argued, among other things, that the State failed to meet its burden to prove each element of the offenses. The trial court denied the motions and entered judgment on the jury's verdict.

Lowery now appeals. He argues that the trial court erred in denying his motions for acquittal and challenges the sufficiency of the evidence to support his convictions on Counts I and II. He does not appeal his convictions on Counts III and IV.

## Standard of Review

The parties agree that our review is limited to "whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt." *Bowen*, 523 S.W.3d at 487 (citing *Williams v. State*, 386 S.W.3d 750, 753-54 (Mo. banc 2012)). This Court views the evidence and all reasonable inferences in the light most favorable to the verdict, and disregards any contrary evidence or inference. *Williams*, 386 S.W.3d at 754. We give great deference to the trier of fact. *Id.*

## Discussion

When considering whether the evidence is sufficient to support a jury's verdict, we look to the elements of the crime. *State v. Grim*, 854 S.W.2d 403, 411 (Mo. banc 1993); *State v. Jones*, 619 S.W.3d 138, 155 (Mo. App. E.D. 2021). A person commits murder in the second degree if he knowingly causes the death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person. Mo. Rev. Stat. §565.021.1(1).[1] A person commits armed criminal action if he commits a felony under Missouri law by, with, or through the use, assistance, or aid of a deadly weapon, such as a firearm. Mo. Rev. Stat. §§571.015.1, 556.061(22). "An essential element of any crime is that the person

---

[1] All statutory references are to the Revised Statutes of Missouri (Supp. 2017) unless otherwise indicated.

charged with an offense is the person who committed the offense, and the State bears the burden of proving this fact to the trial court." *State v. Allen*, 536 S.W.3d 241, 245 (Mo. App. E.D. 2017).

In challenging the sufficiency of the evidence, Lowery first assails the credibility of Wraggs's identification of Lowery as the shooter and, second, laments that most of the State's evidence was circumstantial. As a matter of law, neither argument is a reason to find the evidence insufficient.

*Witness Credibility*

Lowery argues the only direct evidence that he was the person who murdered Keiva Jones was Corvell Wraggs's testimony that he witnessed Lowery shoot Jones. Lowery characterizes Wraggs's testimony as "not credible" and "unbelievable."

More specifically, Lowery refers to apparent inconsistencies in Wraggs's testimony. Lowery asserts that Wraggs could not have witnessed Lowery shoot Jones because Wraggs had just been shot in the head and was found unconscious. He argues that Wraggs's statements diverged regarding the number of shots fired and the number of people in the alley at different times. Lowery also accuses Wraggs of bias against him. He surmises that Wraggs blamed Lowery for his injuries and the death of his girlfriend and therefore embellished his testimony.[2]

Wraggs's credibility, and any inconsistent statements or bias, were imitable fodder for cross-examination and closing argument at trial. On credibility issues, we defer to the jury "because the trier of fact, whether a judge or jury, 'is in a better position not only to judge the credibility of the witnesses . . . directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record.'" *State v. Porter*, 439 S.W.3d

---

[2] Wraggs's alleged bias would seem to require his knowledge of Lowery's culpability for his injuries and Jones's death.

208, 212 (Mo. banc 2014) (quoting *Essex Contracting, Inc. v. Jefferson Cnty.*, 277 S.W.3d 647, 652 (Mo. banc 2009)). At base, witness credibility is the province of the fact-finder. *State v. Perkins*, 600 S.W.3d 838, 848 (Mo. App. E.D. 2020). As the trier of fact, the jury is the sole arbiter of witness credibility, and it is free to believe or disbelieve all, part, or none of any witness's testimony. *Id.* (citing *State v. Armstrong*, 560 S.W.3d 563, 574 (Mo. App. E.D. 2018)).

Accordingly, a criminal conviction may be sustained by a victim's testimony alone, even if that testimony is uncorroborated. *State v. Ryan*, 576 S.W.3d 326, 332 (Mo. App. S.D. 2019); *see also State v. Dodd*, 637 S.W.3d 659, 668 (Mo. App. W.D. 2021) ("The testimony of a single witness is sufficient to support a conviction even if the testimony of the witness is inconsistent." (internal quotations omitted)); *State v. Byrd*, 423 S.W.3d 882, 885 (Mo. App. E.D. 2014) ("The testimony of a single witness is sufficient to establish the identity of a defendant if the jury believes it beyond a reasonable doubt." (internal quotations omitted)). Here, Lowery's criminal convictions are sustained by Wraggs's testimony, and that testimony was corroborated by circumstantial evidence, which we address below.

Suffice it to say that the witness-credibility issues raised by Lowery are not a basis to disturb the jury's verdict or the trial court's judgment on appeal. *See, e.g., State v. Taylor*, 382 S.W.3d 251, 256 (Mo. App. W.D. 2012) ("Thus, whether the eyewitnesses had the opportunity and ability to perceive and recall the shooter was rightfully a matter for the jury to weigh.").

### *Circumstantial Evidence*

Second, Lowery argues that most of the evidence supporting his convictions on Counts I and II for murder in the second degree and armed criminal action was circumstantial.[3] He points

---

[3] Circumstantial evidence is evidence that does not directly prove a fact in issue, but gives rise to a logical inference that the fact exists. *State v. Howery*, 427 S.W.3d 236, 245 (Mo. App. E.D. 2014).

to the dearth of direct evidence presented by the State.[4] But, much like witness credibility, circumstantial evidence is not a basis for reversal on appeal.

So long as sufficient evidence supports a jury's verdict beyond a reasonable doubt, "we need not disturb the result simply because the case depended wholly, mostly, or partially upon circumstantial proof." *Grim*, 854 S.W.2d at 406; *see also State v. Mills*, 623 S.W.3d 717, 724 (Mo. App. E.D. 2021) ("The State may meet its burden of proof by presenting either direct or circumstantial evidence connecting the defendant to each element of the crime."). Rather, we give circumstantial evidence the same weight as direct evidence, and circumstantial evidence alone can be sufficient to support a conviction. *State v. Jackson*, 439 S.W.3d 276, 278 (Mo. App. E.D. 2014); *State v. Howery*, 427 S.W.3d 236, 244 (Mo. App. E.D. 2014).[5] As we explained in *State v. Brooks*:

> Even though much of the evidence was circumstantial, circumstantial evidence is given the same weight as direct evidence and the jury is free to make reasonable inferences from the evidence presented. The fact that there were no eyewitness identifications, fingerprints, footprint identifications or security camera tapes was an argument presented to and rejected by the jury. Under Missouri law, appellate courts do not review what evidence was absent, but instead review the sufficiency of the evidence that was presented.

158 S.W.3d 841, 848 (Mo. App. E.D. 2005).

That the case against Lowery largely was circumstantial is no reason to reverse his convictions.

*Sufficiency of the Evidence*

---

[4] "Direct evidence is that coming from an eye witness; or one who speaks directly of his own knowledge on the main or ultimate fact to be proven; or who saw or heard the factual matters concerning which he testifies." *State v. Taylor*, 466 S.W.3d 521, 528 (Mo. banc 2015) (internal quotations omitted).

[5] Trial lawyers have been known to argue that circumstantial evidence should be given *more* weight than direct evidence because circumstances, being what they are, are not subject to cross-examination, unlike eyewitnesses.

Lowery's concerns about witness credibility and circumstantial evidence notwithstanding, our standard remains the same: we will affirm if, viewing the evidence in the light most favorable to the verdict, any rational fact-finder could have found Lowery guilty of murder in the second degree and armed criminal action beyond a reasonable doubt. *See Bowen*, 523 S.W.3d at 487.

Notably, Lowery does not challenge his convictions on Counts III and IV for assault in the first degree and armed criminal action for his shooting of Wraggs. The evidence probative of those crimes placed Lowery at the scene of Jones's murder just moments before the murder occurred, with a firearm that Lowery used to shoot Wraggs.

Additional evidence, the sufficiency of which Lowery now challenges, established that Hardesty informed Arrivell of the shooting in the alley, and Arrivell relayed that information to Jones at the front door of 1147 Canaan. Jones went back inside to get dressed and then left to find Wraggs in the alley. In the meantime, Lowery took Hardesty's phone from him at the Imo's Pizza lot, wiped down the cab window, and left on foot.

Moments later, Wraggs saw Lowery shoot Jones in the alley. From 1147 Canaan, Arrivell heard the nearby gunshot. He immediately saw a man meeting Lowery's description run from the murder scene to an old, rusty, blue pickup truck, which met the description of Lowery's truck. The blue pickup truck fled at such a high rate of speed that Arrivell and his sister could not keep up with it.

When police officers responded, they found both Wraggs and Jones with gunshot wounds to the head. They also found Hardesty's phone at the scene of the murder—the same phone Lowery had taken from Hardesty moments earlier at the Imo's Pizza lot.

After the murder, police found Lowery in Tennessee. Lowery confirmed that he knew Wraggs and Jones as his neighbors, he owned a blue pickup truck meeting the description of the

9

truck that fled the murder scene, and he owned a gun. Both Wraggs and Hardesty positively identified Lowery in open court.

This evidence and the inferences drawn therefrom were sufficient for any reasonable trier of fact to find that Casey Lowery was the person who committed murder in the second degree and armed criminal action in the alley behind 1147 Canaan. *See Allen*, 536 S.W.3d at 245. That is, any reasonable juror could have found beyond a reasonable doubt that Lowery knowingly caused the death of Keiva Jones by, with, or through the use, assistance, or aid of a firearm. *See* Mo. Rev. Stat. §§ 565.021.1(1), 571.015.1; *see also Mills*, 623 S.W.3d at 725 (holding sufficient evidence supported defendant's convictions for murder in the first degree and armed criminal action).

The trial court did not err in denying Lowery's motions for acquittal. The point is denied.

## Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
Cristian M. Stevens, J.

Gary M. Gaertner, Jr., P.J., and
John P. Torbitzky, J., concur.

10