STATE of Missouri, Respondent,

v.

Roger Lee THOMPSON, Appellant.

No. WD 72164.

Missouri Court of Appeals,
Western District.

Dec. 6, 2011.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 31, 2012.

Application for Transfer Denied
April 3, 2012.

Laura G. Martin, for Appellant.

Shaun J. Mackelprang, for Respondent.

Before Division Three: JAMES E. WELSH, Presiding Judge, JAMES M. SMART, JR., Judge and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

Roger L. Thompson appeals from his conviction of one count forcible rape, § 566.030,[1] and one count statutory rape in the second degree, § 566.034. For the following reasons, the judgment is affirmed.

On February 5, 1996, A.T., a fifteen year-old girl, was on her way to a Narcotics Anonymous meeting when she decided to visit her boyfriend instead. After initially getting a ride with someone, she was dropped off at a bus stop downtown because she was unable to provide adequate directions to the driver. She then asked the people at the bus stop for directions to the street on which her boyfriend lived. A man offered to show A.T. the way, telling her he was going in that direction.

As they were walking, the man said he needed to urinate and asked A.T. to hold the door open for him to an abandoned apartment building. The man then pulled A.T. inside the building. A.T. pleaded with the man to let her leave, but he placed his hand on the door and told her "[y]ou are not going nowhere." A.T. then struggled with the man, but he slapped her, and, out of fear, she did not fight with him any further. He also threatened to kill her, claiming he had a gun.

---

1. All statutory references are to RSMo 1994 unless otherwise noted.

The man led A.T. to a dark, abandoned room filled with trash. He sat her on a chair and proceeded to rape her. When he had finished, the man told A.T. to wait a while before she left the apartment building, threatening to kill her if she left too soon. After waiting for some time, A.T. found her clothes and left the building. Eventually, someone called the police on A.T.'s behalf, and she was then transported to the hospital.

After A.T. arrived at the hospital, Dr. Jane Knapp and Linda Scheiber, R.N., examined A.T. and administered a rape kit. The rape kit included two vaginal swabs, two vaginal smears, blood samples, a saliva sample, and various hair samples. Dr. Knapp and nurse Scheiber also collected A.T.'s jeans and underwear for the police.

Ian Ledoux, a crime scene technician, transported the rape kit and clothing to the Kansas City Police Department Crime Laboratory where Darvene Duvenci, a forensic specialist, examined its contents as well as additional evidence collected from the crime scene. Duvenci found intact sperm on one of the vaginal smears and was able to develop a DNA profile from it. At the time, however, the police had no suspects in the case.

In 2008, the DNA profile obtained from A.T.'s rape kit matched a DNA sample taken from Appellant at the expected frequency of 1 in every 2.7 quadrillion people. Appellant was then charged with the rape of A.T. On December 14, 2009, Appellant's trial began, and a jury ultimately convicted him of forcible rape and statutory rape in the second degree. The court sentenced Appellant to concurrent thirty-five-year and seven-year terms of imprisonment for the counts of forcible rape and statutory rape, respectively. Appellant timely filed his notice of appeal.

In his first point on appeal, Appellant asserts that the trial court abused its discretion by overruling Appellant's objection to Duvenci's testimony concerning the rape kit because the State failed to provide reasonable assurance that the rape kit arrived at the KCPD crime lab in the same condition in which it left the hospital. We disagree.

We review the trial court's admission of evidence for abuse of discretion. *State v. Reed,* 282 S.W.3d 835, 837 (Mo. banc 2009). A trial court abuses its discretion when the admission of evidence is so prejudicial that it deprives the defendant of a fair trial. *State v. Sutton,* 320 S.W.3d 729, 734 (Mo.App. E.D.2010).

Before evidence can be admitted at trial, the trial court must be satisfied that the evidence is in the same condition when tested as when it was originally obtained. *State v. Link,* 25 S.W.3d 136, 146 (Mo. banc 2000). Thus, the State must provide reasonable assurance that the evidence was not tampered with, substituted, or contaminated prior to trial. *State v. Bode,* 125 S.W.3d 924, 929–30 (Mo.App. W.D.2004). Such reasonable assurance is achieved by establishing a chain of custody. *Link,* 25 S.W.3d at 146. Whether a sufficient chain of custody has been established is a matter within the trial court's sound discretion. *Id.*

The State established a sufficient chain of custody for A.T.'s rape kit. Dr. Knapp testified that she took the vaginal swabs from A.T. and collected A.T.'s clothing for the police. Nurse Scheiber corroborated Dr. Knapp's testimony, testifying she assisted Dr. Knapp in administering the rape kit and collected some of the samples from A.T. herself. Both further stated that completing a rape kit is a collaborative effort in which samples and specimens are collected from the patient according to the instructions found on the envelopes in the

rape kit. Dr. Knapp also testified that it is hospital protocol to place the collected samples within their designated envelope, label them, and seal them. The kit would then be sealed itself and placed in a safe area until the police retrieved it. Finally, Duvenci testified that when she received A.T.'s rape kit at the crime laboratory, it was sealed in a brown evidence bag. She further stated that the outside of the bag had the case number, the item numbers that were contained within the bag and the initials and date of the person packaging that evidence and that there was no indication the kit had been tampered with or contaminated.

■ The only individual to have custody of A.T.'s rape kit that did not testify was Ian Ledoux, the crime scene technician that transported the kit from the hospital to the KCPD crime lab. But, in establishing a chain of custody, the State does not have "to account for every hand-to-hand transfer of an exhibit between the time it was obtained and its introduction at trial, nor is it required to exclude every possibility that the evidence has been disturbed." *Bode*, 125 S.W.3d at 930. In fact, "[t]he trial court may assume, absent a showing of bad faith, ill will or proof, that officials having custody of exhibits properly discharged their duties and that no tampering occurred." *Link*, 25 S.W.3d at 146. Thus, the state provided the trial court with reasonable assurances that the rape kit had not been tampered with or contaminated prior to being received at the KCPD Crime Lab.

Appellant contends that there can be no reasonable assurance that the rape kit arrived at the crime lab in the same condition in which it left the hospital without testimony regarding the specific manner in which A.T.'s rape kit was packaged and stored for the police, as opposed to the general testimony the State provided concerning the hospital's procedures for administering and storing rape kits. This court, however, has found that testimony concerning a hospital's rape kit protocol is sufficient to establish a chain of custody. *See State v. Colbert*, 949 S.W.2d 932, 942 (Mo.App. W.D.1997) (finding that the State had provided sufficient evidence to establish a chain of custody where the doctor testified he placed the samples taken from the victim into a bag with the victim's clothing and that it was hospital practice for the nurse to then seal the bag and keep it until the police crime lab retrieved it). Thus, the testimony of Dr. Knapp and nurse Scheiber concerning the hospital procedures for administering and storing rape kits, combined with Duvenci's testimony regarding the manner in which she received A.T.'s rape kit, was sufficient to provide a reasonable assurance that the rape kit arrived at the crime lab in the same condition it left the hospital. The trial court, therefore, did not abuse its discretion in allowing Duvenci's testimony regarding the rape kit. Point one is denied.

■ In his second point, Appellant asserts the trial court violated his constitutional right to be free from double jeopardy by entering convictions on both the forcible rape and statutory rape charges. Appellant concedes he failed to properly preserve the double jeopardy issue for appeal. Instead, he asks this court to review his conviction for plain error. Plain error review consists of two steps. *State v. Darden*, 263 S.W.3d 760, 762 (Mo.App. W.D. 2008). "First, the court must determine whether the trial court committed an evident, obvious, and clear error, which affected the substantial rights of the appellant." *Id.* at 762–63. Secondly, if such error exists, then we must "determine whether manifest injustice or a miscar-

riage of justice has resulted therefrom." *Id.* at 763.

 "The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, prevents a criminal defendant from being subjected to multiple punishments for the same offense." *State v. Harris*, 243 S.W.3d 508, 511 (Mo.App. W.D.2008) (internal quotation omitted). Preventing multiple punishments for the same offense is intended to ensure that the courts' sentencing discretion remains within the confined limits established by the legislature. *State v. Dennis*, 153 S.W.3d 910, 918 (Mo. App. W.D.2005). Thus, double jeopardy analysis regarding multiple punishments is limited to determining whether cumulative punishments were intended by the legislature. *Id.*

At the time of A.T.'s rape, the Missouri legislature defined second-degree statutory rape as an act in which a person twenty-one years old or older has sexual intercourse with another person who is less than seventeen years of age. § 566.034.1. Similarly, forcible rape was defined as an incident in which a person has sexual intercourse with another person by the use of forcible compulsion. § 566.030.1. Neither statute, however, provides insight as to whether the legislature intended cumulative punishments when both crimes arise out of a single sexual act.

Where the legislature is silent with regard to cumulative punishment, section 556.041 controls. *State v. McTush*, 827 S.W.2d 184, 187 (Mo. banc 1992). Section 556.041 provides, in pertinent part, that a person may not "be convicted of more than one offense if . . . [t]he offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct." § 556.041(3). Appellant asserts that statutory sex crimes constitute a specific instance of the general crime of forcible rape and, thus, the legislature did not intend to subject defendants to cumulative sentences for both forcible and statutory sex crimes arising out of the same nonconsensual sex act. We disagree.

The crux of Appellant's argument stems from the fact that statutory sex crimes are deemed nonconsensual because minors protected by such statutes are presumed to be unable to consent to engaging in sexual activity. *See State v. Stokely*, 842 S.W.2d 77, 81 (Mo. banc 1992). Because of their presumed nonconsensual nature, Appellant argues statutory sex crimes are merely instances in which the law assumes a minor was forced to engage in a sexual act, thereby making statutory rape a specific instance of the more general crime of forcible rape. Thus, Appellant contends the nonconsensual aspect of statutory sex crimes is synonymous with forcible compulsion.

Appellant's argument is defeated by the very case on which he relies. Our Supreme Court has instructed that "[s]tatutory rape is a strict liability crime." *Id.* In *Stokely*, the Court further explained that " '*age* is the essential element in statutory rape,' and the intent of the perpetrator and the consent of the victim are irrelevant." *Id.* (quoting *State v. Ybarra*, 386 S.W.2d 384, 386 (Mo.1965); *State v. Baker*, 276 S.W.2d 131, 133 (Mo.1955)) (emphasis in original). Thus, in stating that "[t]he law regarding statutory rape provides that a person protected under the statute is incapable of consenting to sexual intercourse," the Court was merely confirming that "consent is no defense" because age is the essential element. *Id.*

Moreover, forcible compulsion, by its very definition, does not encompass all instances of nonconsensual sex crimes.

Forcible compulsion requires either "[p]hysical force that overcomes reasonable resistance; or [a] threat, express or implied, that places a person in reasonable fear of death, serious physical injury or kidnapping of himself or another person." § 556.061(12). Thus, forcible sex crimes require an element of physical force or threat that is simply not required for a second-degree statutory rape conviction, as the mere act of an individual twenty-one years old or older engaging in sexual intercourse with someone under the age of seventeen, absent any physical force or threat, constitutes second-degree statutory rape. Accordingly, circumstances constituting a second-degree rape conviction do not automatically satisfy the necessary requirements for a forcible rape conviction. Therefore, it does not follow that statutory sex crimes are specific instances of what Appellant deems the more general crime of forcible rape.

Appellant further asserts that Missouri courts have already concluded that statutory rape and forcible rape are not distinct, separate offenses. *See State v. Cochrell*, 492 S.W.2d 22, 26 (Mo.App. E.D.1973) (stating "[s]tatutory rape is not a separate offense" from forcible rape in Missouri). *Cochrell* was decided, however, when statutory rape and forcible rape were defined within the same sexual offense statute. *See id.* (quoting the rape statute enacted at the time, which provided that a person was guilty of rape by either "carnally and unlawfully knowing any female child under the age of sixteen years, or by forcibly ravishing any woman of the age of sixteen years or upward"). The fact that statutory rape and forcible rape have since been statutorily defined as separate offenses is further indicative of the legislature's intent that statutory rape and forcible rape be viewed as separate and independent crimes. Thus, because statutory rape is not a specific instance of forcible rape,

Appellant was not subjected to multiple punishments for the same offense. Therefore, no error occurred, plain or otherwise. Appellant's substantial rights have not been violated. Point denied.

Judgment affirmed.

All concur.