

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

STATE OF MISSOURI, )
)
                 Respondent, )
) **WD84346**
v. )
)
) **OPINION FILED:**
) **April 26, 2022**
JERRY ALLEN HEDGES, JR., )
)
                 Appellant. )

**Appeal from the Circuit Court of Saline County, Missouri
The Honorable Dennis A. Rolf, Judge**

**Before Division One:** Lisa White Hardwick, Presiding Judge, and
Alok Ahuja and Mark D. Pfeiffer, Judges

Mr. Jerry Hedges ("Hedges") appeals from the judgment entered by the Circuit Court of Saline County, Missouri ("trial court"), following a jury trial in which he was found guilty of one count of first-degree rape, three counts of first-degree sodomy, one count of second-degree child molestation, and one count of incest and sentenced to a total of 109 years' imprisonment. We affirm.

## Factual and Procedural History[1]

Victim[2] was born on June 6, 2003, to Hedges and his then-wife. Hedges and Victim's mother divorced when she was young, and she lived primarily with Hedges. When Victim was twelve or thirteen years old and in sixth or seventh grade, Hedges started having sexual contact with Victim. At first, Hedges brushed against different parts of Victim's body; but his conduct escalated to touching Victim inappropriately, to molesting Victim, and finally to raping Victim. This would happen every few days when her stepmother was at work and her younger brothers were watching cartoons or taking a nap. Victim did not tell anyone about the sexual abuse because she was scared of Hedges and she did not think anyone would believe her because she did not tell anyone when the abuse first began.

On March 3, 2019, Victim's stepmother had gone to work and her brothers were napping. Hedges told fifteen-year-old Victim to change into a crop top and skirt with nothing underneath it while he took a shower. After his shower, Hedges and Victim went into the kitchen where he set up his phone to record them. Hedges then started kissing Victim on the mouth and neck, touching her breasts, rubbing his hand against her vagina, and putting his finger in her vagina before having her touch his penis. Hedges had Victim get on her hands and knees on the kitchen floor; then he got behind her and forced his penis into her vagina. Afterward, they went into one of the bedrooms, and Hedges put his penis into her mouth and had her give him a "blow job." Hedges then had Victim lay on her stomach on the bed; he got behind Victim and forced his penis into her anus, where he ejaculated. Victim was on birth control, and Hedges did not use a condom. This was not the first time Hedges had forced his penis into Victim's vagina and anus.

---

[1] "We view the evidence in the light most favorable to the jury's verdict, disregarding all contrary evidence and inferences." *State v. Winters*, 623 S.W.3d 746, 747 n.1 (Mo. App. W.D. 2021).

[2] Pursuant to section 595.226.1 RSMo 2016, we have used the term "Victim" to protect the identity of the victim of an offense under Chapter 566.

On March 6, three days after the last incident, Victim told her friend in the United Kingdom, Mr. Levi Wiseman, that Hedges had been raping her. She sent Mr. Wiseman screenshots of pictures and text message conversations between herself and Hedges that were "inappropriate" and about "different kinks" or about things that Hedges wanted Victim to say.

When Hedges found out that Victim had told Mr. Wiseman, Hedges became very angry and threatened to kill himself if Victim did not tell Mr. Wiseman that she was lying. Before Hedges left to pick up Victim's younger brothers from daycare and take her stepmother to her second job, Hedges took Victim's cell phone to prevent her from contacting anyone. Victim used a house phone to call her friend, Ms. Colette Strathman. Ms. Strathman drove to Victim's house. At first, Victim told her that she was scared that her father was trying to commit suicide, but eventually Victim told Ms. Strathman that Hedges had been raping her. Ms. Strathman took Victim to the Higginsville police station.

Initially, Victim told the detective only that she was worried that her father was trying to kill himself. The detective left the police station and made contact with Hedges during a traffic stop. Hedges told the detective that he was "having issues with his daughter," that she was "having boy issues," and that "it was just . . . a bunch of teenage drama." He told the detective that he had taken Victim's cell phone from her as punishment. The detective returned to the police station and explained to Victim and Ms. Strathman that Hedges did not appear to be suicidal and that there was nothing more he could do. The detective observed that Victim was emotional and afraid, and Ms. Strathman told the detective that Hedges and Victim had been engaged in a sexual relationship for the past two years. Victim then told the detective about the sexual abuse. Victim told the detective that there were messages Hedges had sent her on her cell phone. After talking with the detective, she made a written statement.

3

Thinking that Victim's cell phone contained potential evidence, the detective again contacted Hedges, who was inside a police vehicle across the street from the police station. The detective told Hedges that there had been an allegation of sexual contact between him and Victim and that he needed Victim's phone for evidentiary purposes. After the detective retrieved the phone, Victim informed him that it was password protected. However, the detective found that the phone had been reset to a factory default setting with no password. Victim told him that it was not like that when she gave the phone to her father. The detective checked the phone for the SIM card, but the SIM card had been removed, making it impossible to retrieve any messages or information from Victim's phone. Later, when the detective called Hedges and asked him about the status of the phone and the location of the SIM card, Hedges told the detective that he had no idea what the detective was talking about and did not know anything about the phone or the status of the SIM card; Hedges then terminated the call.

During the detective's conversation with Victim, she explained that she had disclosed the information on her phone to Mr. Wiseman. Victim contacted Mr. Wiseman and had him send the pictures and messages she had previously sent him to the detective, who downloaded and printed them. Among the messages were Hedges telling Victim, "[R]emember . . I'm YOUR dog, so train me"; "[t]each me[,] Show me what you really want"; "I AM a filthy pervert and YOU have a nice rack"; and "various messages about daddy and . . . pictures of breasts or sexual images." Hedges sent Victim "dirty talk"—"You're too little to do it by yourself, baby, let Daddy help," "Do that again and I'll spank you; is that what you want?"—with Hedges's comment, "I thought of you instantly." Hedges also sent Victim a picture that said, "I miss being my Daddy's 'Dirty Little Slut' or his 'Baby Girl.'" There were also text messages between Hedges and Victim just before the last incident on March 3, 2019, in which Hedges told Victim she was a "good girl" for washing her body before he came home, and that she should "wash DEEP, I'm going for both," which she

4

understood to mean "[h]e was going to rape me both in my vagina and my anus." In response to Victim telling Hedges that she was about to start her period and was having cramps, Hedges replied, "[O]kay baby, I'll be gentle as possible."

The detective contacted Children's Mercy Hospital to set up a sexual assault examination for Victim on March 6, 2019. The Sexual Assault Nurse Examiner interviewed Victim, and she disclosed the details of the March 3, 2019 incident to the nurse and also told her that Hedges made Victim watch pornography. During the examination, the nurse observed redness at the opening of Victim's vagina and a transection or tear on her hymen, indicative of trauma. The nurse also collected external and internal genital swabs and an oral swab, as well as Victim's underwear. Victim's sexual assault kit was submitted to the Missouri State Highway Patrol Laboratory. A stain consistent with seminal fluid was detected on Victim's underwear.

After Victim had been taken to Children's Mercy for the physical examination, the detective learned that Hedges's wife had received a text message from Hedges stating that she would need to find a ride home, he had the van in a Walmart parking lot in Warrensburg, and she "can believe what [she] would like." After viewing the message, the detective sent officers to the Walmart location, but they were unable to locate Hedges. About six weeks later, Hedges was arrested in Oklahoma. While Hedges was in custody, a buccal swab was collected from him. The Missouri State Highway Patrol Laboratory determined that the DNA from the non-sperm fraction profile from Victim's underwear was consistent with Victim's DNA profile, and the DNA from the sperm fraction of the profile from Victim's underwear was consistent with Hedges's DNA profile.

Hedges was charged with:

- rape in the first degree for knowingly having sexual intercourse with Victim, "a person who was incapable of consent because of youth and was known by [Hedges] to be unable

5

to make a reasonable judgment as to the nature or harmfulness of the sexual intercourse" (Count I);

- the felony of sodomy in the first degree for knowingly having deviate sexual intercourse with Victim, "a person incapable of consent because of youth, by placing his penis in the anus of . . . Victim and was known by [Hedges] to be unable to make a reasonable judgment as to the nature or harmfulness of the deviate sexual intercourse" (Count II);

- the felony of sodomy in the first degree for knowingly having deviate sexual intercourse with Victim, "a person incapable of consent because of youth, by placing his penis in the mouth of . . . Victim and was known by [Hedges] to be unable to make a reasonable judgment as to the nature or harmfulness of the deviate sexual intercourse" (Count III);

- the felony of sodomy in the first degree for knowingly having deviate sexual intercourse with Victim, "a person incapable of consent because of youth, by placing his finger in the vagina of . . . Victim and was known by [Hedges] to be unable to make a reasonable judgment as to the nature or harmfulness of the deviate sexual intercourse" (Count IV);

- the class B felony of child molestation in the second degree for subjecting Victim, "who was then less than seventeen years of age, to sexual contact by placing his hands on her breasts, engaged in this offense with a person [Hedges] knew to be [his] descendant by blood" (Count V); and

- the class E felony of incest for engaging in sexual intercourse with Victim, "whom [Hedges] knew to be a descendant by blood" (Count VI).

At trial, Victim testified as to the incidents of Hedges's sexual abuse. Hedges testified in his own defense, denying the charges. The jury found Hedges guilty of all six counts as charged. The jury recommended sentences of thirty years' imprisonment as to Count I, twenty years' imprisonment as to Count II, twenty years' imprisonment as to Count III, twenty years'

imprisonment as to Count IV, fifteen years' imprisonment as to Count V, and four years' imprisonment as to Count VI.

Hedges filed a motion for new trial, asserting that the trial court erred in: not allowing him to question Victim about previous sexual intercourse with other persons to show that she was capable of consent; denying his submission of jury instructions for second-degree statutory rape and second-degree statutory sodomy because the State adduced evidence that supported all the elements of both offenses; and overruling his motion for judgment of acquittal.

At the sentencing hearing, the trial court denied Hedges's motion for acquittal or in the alternative for a new trial. The trial court followed the jury's recommendations and sentenced Hedges accordingly, further ordering that all of the sentences be served consecutively, for a total of 109 years.

Hedges timely appealed. For ease of analysis, we will address some of Hedges's nine points in groups. Additional facts relevant to the disposition of this appeal will be set forth in the analysis of the points to which they relate.

**Points I-IV – Sufficiency of the Evidence that Victim was Incapable of Consent**

In Hedges's first four points on appeal, he asserts that the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence and entering judgment as to Counts I through IV because the State failed to present sufficient evidence to prove beyond a reasonable doubt that Victim was "incapable of consent" to sexual intercourse and deviate sexual intercourse because of her youth.

**Standard of Review**

"'When reviewing the sufficiency of the evidence to support a conviction and a trial court's denial of a motion for judgment of acquittal, our task is to determine whether sufficient evidence was presented at trial to permit a reasonable fact finder to find the defendant's guilt beyond a

reasonable doubt.'" *State v. Glaze*, 611 S.W.3d 789, 794 (Mo. App. W.D. 2020) (quoting *State v. Shaw*, 592 S.W.3d 354, 357 (Mo. banc 2019)). "In reviewing the sufficiency of the evidence, we do not reweigh the evidence, and the test is not whether we believe the evidence established the defendant's guilt beyond a reasonable doubt." *Id.* "Instead, we view the evidence in the light most favorable to the verdict, disregarding all contrary evidence and reasonable inferences, in order to determine whether any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks omitted).

**Analysis**

"A person commits the offense of rape in the first degree if he or she has sexual intercourse with another person who is incapacitated, *incapable of consent*, or lacks the capacity to consent, or by the use of forcible compulsion." § 566.030.1 (emphasis added).[3] Similarly, "[a] person commits the offense of sodomy in the first degree if he or she has deviate sexual intercourse with another person who is incapacitated, *incapable of consent*, or lacks the capacity to consent, or by the use of forcible compulsion." § 566.060.1 (emphasis added).

Under Missouri law, "consent or lack of consent may be expressed or implied," and "[a]ssent does not constitute consent" if:

> (a) It is given by a person who lacks the mental capacity to authorize the conduct charged to constitute the offense and such mental incapacity is manifest or known to the actor; or
>
> (b) It is given by a person who *by reason of youth*, mental disease or defect, intoxication, a drug-induced state, or any other reason is manifestly unable or known by the actor to be unable to make a reasonable judgment as to the nature or harmfulness of the conduct charged to constitute the offense; or
>
> (c) It is induced by force, duress or deception[.]

---

[3] All statutory references are to the REVISED STATUTES OF MISSOURI 2016, as supplemented through the 2018 Cumulative Supplement, unless otherwise indicated.

§ 556.061(14) (emphasis added).

In *State v. Niederstadt*, 66 S.W.3d 12 (Mo. banc 2002), the Missouri Supreme Court addressed the factors which a fact-finder could consider in determining whether a defendant compelled a victim to engage in sexual acts through the use of physical force "that overcomes reasonable resistance" under what is now section 556.061(27). The Court explained that:

> In determining if the force used is sufficient to overcome reasonable resistance, the court does not look to any single fact but to the totality of the circumstances. Among the factors taken into account in considering the totality of the circumstances are whether violence or threats precede the sexual act; the relative ages of the victim and accused; the atmosphere and setting of the incident; the extent to which the accused was in a position of authority, domination, and control over the victim; and whether the victim was under duress. Each case necessarily turns on its own facts.

*Id.* at 15 (citations omitted).

The factors listed in *Niederstadt*, to determine the level of physical force necessary to overcome a particular victim's "reasonable resistance," essentially ask whether a defendant's actions have coerced a victim into engaging in nonconsensual sexual acts. We believe those same factors are also relevant to determining whether a particular victim, *especially one as young as Victim* in this case, is capable of consenting to sexual acts due to her youth. Consideration of those factors in relationship to Victim's young age establish that the evidence was sufficient in this case to prove that Victim was incapable of consenting to sexual acts with Hedges.

The jury heard testimony from Victim that she lived with Hedges, her stepmother and two younger brothers. Victim testified that when she was *twelve or thirteen years old* and in sixth or seventh grade, Hedges started having sexual contact with her. At first, Hedges brushed against different parts of Victim's body; but his conduct escalated to touching Victim inappropriately, to molesting Victim, and finally to raping Victim every few days *when she was fifteen years old*. Victim testified that she did not tell anyone about the sexual abuse because she was scared of

9

Hedges. When Victim was asked why she responded to Hedges's text messages, she answered, "Because I live with him. I was scared of not getting responses at all. I had grown to just respond so I didn't get in any trouble." The jury also heard that when Hedges found out that Victim had told Mr. Wiseman of the sexual abuse, Hedges was very angry and threatened that if she did not tell Mr. Wiseman that she was lying, Hedges would kill himself by cutting his throat. Victim, still just a teenager, believed that Hedges would do it because he held a knife to his throat in front of her.

Perhaps most notably, Hedges himself testified at trial that he agreed, "that a daughter can't consent to having sex with her dad" because "that would be pretty harmful to her . . . ."[4]

Consistent with Missouri law and the evidence presented of Hedges's manipulative and sexually abusive behavior toward the teen-aged Victim (and even pre-teen in some instances) for four years before the March 3, 2019 incident, it was reasonable for the jury to find beyond a reasonable doubt that Victim was not reasonably capable of consenting to sexual intercourse and deviate sexual intercourse with Hedges because of her youth.[5]

---

[4] Though Hedges was the presumed father of Victim and there was no evidence that Hedges had ever contested his paternity of Victim, the *context* for his admissions about the inability of fathers and daughters to have "consensual" sex was that he did not believe he was the *biological* father of Victim. The evidence, however, is that Hedges was the only "father" Victim had ever known or resided with.

[5] We also note that, in a variety of related contexts, the legislature has declared that persons less than seventeen, or sometimes less than eighteen, are incapable of consenting to particular acts. With regard to sexual offenses, it is a crime for a person age twenty-one or older to have sexual intercourse or deviate sexual intercourse with a person under the age of seventeen, indicating an intent to deem minors incapable of consenting to such conduct. Section 566.034.1 provides that "[a] person commits the offense of statutory rape in the second degree if being twenty-one years of age or older, he or she has sexual intercourse with another person who is *less than seventeen years of age*." (Emphasis added.) Likewise, section 566.064.1 provides that "[a] person commits the offense of statutory sodomy in the second degree if being twenty-one years of age or older, he or she has deviate sexual intercourse with another person who is *less than seventeen years of age*." (Emphasis added.) In other areas of the law, "Missouri has similarly designated ages beyond those at issue here as the age at which one can lawfully provide consent." *J.C.M. v. J.K.M.*, 573 S.W.3d 672, 684 (Mo. App. S.D. 2019). "With a few minor exceptions, a child under the age of 18 may not legally consent to his or her own medical or surgical procedures." *Id.* (citing § 431.061.1(1), (2), (4)(a)-(c)). Additionally, "custodial consent is necessary for those under age 18 who wish to marry." *Id.* (citing § 451.090.2). Here, even though the State charged Hedges with first-degree rape and sodomy instead of statutory rape and sodomy, it strains credulity to suggest that Hedges's manipulative behavior towards Victim at her age could ever logically lead one to conclude that Victim could have consented to the criminal acts at issue.

Points I, II, III, and IV are denied.

## Point V – Exclusion of Evidence of Victim's Prior Sexual Conduct

In Hedges's fifth point, he asserts that the trial court abused its discretion in excluding evidence of Victim's prior sexual conduct to rebut the State's argument that she was incapable of consenting to sexual intercourse and deviate sexual intercourse due to her youth. He contends that exclusion of this evidence violated his rights to present a defense and to a fair trial.

### Standard of Review

"A trial court has broad discretion to admit or exclude evidence during a criminal trial, and error occurs only when there is a clear abuse of this discretion." *State v. Wood*, 580 S.W.3d 566, 574 (Mo. banc 2019) (internal quotation marks omitted). "A trial court abuses its discretion only if its decision to admit or exclude evidence is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Id*. (internal quotation marks omitted). "This Court will reverse the trial court's decision only if there is a reasonable probability that the error affected the outcome of the trial or deprived the defendant of a fair trial." *Id*. (internal quotation marks omitted).

### Analysis

Prior to trial, the State filed a motion in limine, requesting in part that the trial court prohibit Hedges or his counsel from making statements in the presence of the jury, or adducing any testimony or evidence, concerning "information related to the opinion or reputation evidence of the complaining witness' alleged prior or current sexual conduct." At a pre-trial hearing on the motion, the State informed the trial court that information had been brought up during a deposition regarding Victim's past sexual activity "with other individuals entirely unrelated to this case." The State argued that the evidence "doesn't serve any legal purpose, legitimate purpose for those

11

interactions to come up and I believe the victim is protected from that being brought up in trial." Hedges's counsel responded that he had read the rape shield statutes and that he would be "trying to bring up something that will run counter to that." The trial court granted the State's motion in limine, "subject to there being exceptions."

On the morning of trial, the trial court stated for the record that there had been a discussion in chambers concerning the rape shield statute and its application to Hedges's request to inquire of the Victim regarding her prior sexual conduct. The trial court noted that it was Hedges's position that "it should be admissible to show whether or not she had the ability to consent, since one of the elements or part of the charge is that because of her youth, she did not have the ability." Hedges's counsel stated that his "purpose would be to ask about any prior sexual intercourse that was consensual to show that she does have the capacity to consent." The State responded that "the rape shield law was specifically enacted to protect victims such as this. What he is wanting to ask about is completely unrelated and totally different circumstances." The trial court ruled that such evidence did not fall under an exception to the rape shield statute and refused to allow that questioning.

During trial, outside the hearing of the jury, Hedges's counsel questioned Victim as an offer of proof. Hedges's counsel elicited from Victim that about a month before the last incident with Hedges in March 2019, she had had consensual sexual intercourse with someone other than Hedges. Victim further testified that "[t]here was another time a few years before that," and she affirmed that it "was consensual as well," meaning that she was "okay with it and said everything is fine" and "wanted to do it." On cross-examination, Victim testified that she was not related to the person with whom she had consensual sex, the person did not live in her house, and the person was not her father.

In Hedges's motion for new trial, he claimed that the trial court erred in not allowing him to question the Victim regarding previous consensual sexual intercourse with other persons.

Under the rape shield statute, section 491.015, opinion and reputation evidence of the complaining witness's prior sexual conduct is inadmissible in prosecutions under Chapter 566 or 568. *State v. Stiff*, 626 S.W.3d 916, 922 (Mo. App. E.D. 2021). "Although the language of the statute is mandatory (*i.e.*, 'evidence of specific instances . . . is inadmissible'), Missouri's appellate courts have described the statute as 'creat[ing] a presumption that evidence of a victim's prior sexual conduct is irrelevant' in 'sex-crime prosecutions.'" *State v. Cooper*, 581 S.W.3d 677, 681 (Mo. App. S.D. 2019) (quoting *McIntosh v. State*, 413 S.W.3d 320, 331 (Mo. banc 2013)). The presumption is subject to the four exceptions set forth in the statute:

> evidence of specific instances of the complaining witness' prior sexual conduct or the absence of such instances or conduct is inadmissible, except where such specific instances are:
>
> (1) Evidence of the sexual conduct of the complaining witness with the defendant to prove consent where consent is a defense to the alleged crime and the evidence is reasonably contemporaneous with the date of the alleged crime; or
>
> (2) Evidence of specific instances of sexual activity showing alternative source or origin of semen, pregnancy or disease;
>
> (3) Evidence of immediate surrounding circumstances of the alleged crime; or
>
> (4) Evidence relating to the previous chastity of the complaining witness in cases, where, by statute, previously chaste character is required to be proved by the prosecution.

§ 491.015.1. If one of the statutory exceptions is met, the admissibility of the evidence of the sexual conduct of the complaining witness is limited "to the extent that the court finds the evidence relevant to a material fact or issue." § 491.015.2. Hedges concedes in his appellate briefing that none of the exceptions listed in section 491.015.1 apply to this case.

The presumption that evidence of a victim's prior sexual conduct is irrelevant in sex-crime prosecutions is also subject to "a judicially created exception based on a criminal defendant's right to a fair trial required by the concept of due process." *Cooper*, 581 S.W.3d at 681. "[T]he judicially created 'right to a fair trial' exception to section 491.015 does not apply when the evidence . . . does not directly refute evidence that tends to show a defendant's guilt." *Id.* at 682. Although Hedges contends that the evidence of Victim's prior consensual sexual activity is relevant such that exclusion of that evidence violated his due process rights to a fair trial and to present his defense, citing *State v. Samuels*, 88 S.W.3d 71, 82 (Mo. App. W.D. 2002), he fails to explain how exclusion of the specific evidence that he advocates deprived him of due process.

The fact that Victim may have previously engaged in consensual sex with another person does nothing to support the argument that Victim had the capacity to consent to the March 3, 2019 incident when the perpetrator was *her father*, the person who provided her a home, who had been sexually abusing her from the time she was twelve or thirteen years old, who scared her, and who held a knife to his throat in front of Victim and threatened to kill himself by cutting his throat if she did not recant her claims that he sexually molested her. Victim's participation in consensual sexual intercourse with another person is simply not equivalent to having the capacity to consent to participation in sexual intercourse or deviate sexual intercourse under the facts of this case. Nothing about the proposed evidence of Victim's prior consensual sexual activity with another person speaks to Victim's capacity to consent to the sexual activity that occurred with *her father* on March 3, 2019. Therefore, it had little, if any, probative value to the issues before the jury. Accordingly, the trial court did not abuse its discretion in excluding evidence of Victim's prior sexual conduct.

Point V is denied.

**Points VI, VII, VIII, and IX – Refusal to Submit Proffered**

**Lesser-Included Offense Instructions**

The instructional error claims asserted in Points VI through IX are meritless, whether or not Hedges's counsel adequately preserved a claim that second-degree statutory rape and second-degree statutory sodomy were lesser-included offenses on which Hedges was entitled to instructions.

Specifically, in Hedges's last four points on appeal, he asserts that the trial court erred in refusing to instruct the jury according to his proffered lesser-included offense instructions: for statutory rape in the second degree, because statutory rape in the second degree is denominated a lesser-included offense of rape in the first degree as charged in Count I (Point VI); and for statutory sodomy in the second degree, because statutory sodomy in the second degree is denominated a lesser-included offense of sodomy in the first degree as charged in Count II (Point VII), Count III (Point VIII), and Count III (Point IX).

At the pre-trial hearing, Hedges's counsel argued that "there are already statutes based on ages of the individuals and that is statutory rape and sodomy. And based on the ages here, at most this would be second degree which would be D felonies and I plan to offer jury instructions for those lesser charges." Hedges's counsel acknowledged, "I don't know that that is necessarily the lesser included. I will have to check on that." Later, the trial court asked, "So it is your-all's opinion that statutory rape would be lesser included on this or not?" The prosecutor replied, "It's not the State's opinion, no." Hedges's counsel again acknowledged, "I don't know that it is. I would have to look it up. They just changed that rape statute in 2017. . . . So I'm just saying, I don't know that the issue's come up, case law-wise, yet."

At the instruction conference, the trial court noted that Hedges wanted to offer MAI-CR4th 420.08 as a verdict form for Count I and MAI-CR4th 420.18 as the verdict form for Counts II, III, and IV. The State objected, and the trial court asked Hedges's counsel for his

15

argument in support of giving the proffered instructions. Hedges's counsel stated, "Your Honor, I believe the evidence submitted during this trial supports the elements of those statutes and jury instructions and therefore should be allowed—or the jury should be allowed to deliberate over those and possibly find him guilty of those statutory rape and statutory sodomy second degree offenses." The trial court inquired, "Do you believe these are lesser included offenses?" Hedges's counsel responded, "I don't have any authority for that, [Y]our Honor." The trial court asked, "Wouldn't this fall under the category then that they would be options that the State could choose should they wish to charge in this matter and instead the State has not?" Hedges's counsel replied, "That is probably correct, [Y]our Honor." Thereupon, the trial court refused the four instructions offered by Hedges.[6]

In Hedges's motion for new trial, he claimed that "[t]he trial court erred in denying Defendant's submission of Statutory Rape 2nd degree and Statutory Sodomy 2nd degree jury

---

[6] The following is Hedges's refused instruction for Count I:

> As to Count I, if you find and believe from the evidence beyond a reasonable doubt:
> First, that on or about March 3, 2019, in the State of Missouri, the defendant knowingly
>         had sexual intercourse with [Victim], and
> Second, that at that time, [Victim] was less than seventeen years of age, and
> Third, that at that time, defendant was twenty-one years of age or older,
> then you will find the defendant guilty under Count I of statutory rape in the second degree.
>         However, unless you find and believe from the evidence beyond a reasonable doubt each
> and all of these propositions, you must find the defendant not guilty of that offense.

The following is Hedges's refused instruction for Count II:

> As to Count II, if you find and believe from the evidence beyond a reasonable doubt:
> First, that on or about March 3, 2019, in the State of Missouri, the defendant knowingly
>         had deviate sexual intercourse with [Victim] by placing his penis in the anus of
>         [Victim], and
> Second, that at that time, [Victim] was less than seventeen years of age, and
> Third, that at that time, defendant was twenty-one years of age or older,
> then you will find the defendant guilty under Count II of statutory sodomy in the second degree.
>         However, unless you find and believe from the evidence beyond a reasonable doubt each
> and all of these propositions, you must find the defendant not guilty of that offense.

The refused instructions for Counts III and IV are identical except they refer to Counts III and IV, respectively, and state the methods of "placing his penis in the mouth of [Victim]" and "placing his finger in the vagina of [Victim]," respectively.

16

instructions," arguing that "[t]he State adduced evidence and testimony that supported all the elements of Statutory Rape and Sodomy in the 2nd degree and therefore the jury should have been allowed the option to deliberate on those instructions in addition to the instructions offered by the State." However, on appeal, he posits that the offenses in his proffered instructions were denominated lesser-included offenses of the crimes charged.

"A point raised on appeal must be based upon the same theory . . . as preserved in the motion for a new trial." *State v. Lucas*, 559 S.W.3d 434, 445 (Mo. App. W.D. 2018) (internal quotation marks omitted). "An issue that is not preserved for appellate review is subject to only plain error review." *Id*. (internal quotation marks omitted).

## Standard of Review

"Plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 29.12(b); Rule 30.20. Plain error review is a two-step process:

> The first step requires a determination of whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. All prejudicial error, however, is not plain error, and [p]lain errors are those which are evident, obvious, and clear. If plain error is found, the court must then proceed to the second step and determine whether the claimed error resulted in manifest injustice or a miscarriage of justice.

*Lucas*, 559 S.W.3d at 445-46 (citations omitted) (internal quotation marks omitted).

## Analysis

Section 556.046.1 provides that "[a] person may be convicted of an offense included in an offense charged in the indictment or information." As relevant to our analysis, "[a]n offense is so included when . . . [i]t is specifically denominated by statute as a lesser degree of the offense charged[.]" § 556.046.1(2). Thus, if the offense has degrees, the lower degree is by statute a lesser-included offense of the higher. For example: "Missouri statutes create four degrees of the

17

offense of domestic assault: (1) first-degree domestic assault, § 565.072; (2) second-degree domestic assault, § 565.073; (3) third-degree domestic assault, § 565.074; and (4) fourth-degree domestic assault, § 565.076." *State v. Soliben*, 621 S.W.3d 585, 595 (Mo. App. S.D. 2021). "Third-degree domestic assault is specifically denominated by statute as a lesser degree of the offense charged in the information [second-degree domestic assault]." *Id*. (citing *State v. Brown*, 524 S.W.3d 44, 48 (Mo. banc 2017) (third-degree assault is a lesser-included offense of first-degree assault because it is specifically denominated as such by statute); *State v. Greer*, 348 S.W.3d 149, 154 (Mo. App. E.D. 2011) (second-degree and third-degree assault are lesser-included offenses of first-degree assault because they are specifically denominated by statute as lesser degrees of the offense charged, per § 556.046.1(2))).

"Our presumption is that the legislature does not intend to perform a useless act in enacting statutes or in amending statutes, but rather it intends such act to have some effect or accomplish some legislative purpose." *Treta v. State*, 559 S.W.3d 406, 411-12 (Mo. App. W.D. 2018) (citing *State v. Walker*, 352 S.W.3d 385, 391 (Mo. App. E.D. 2011)). It is noteworthy that "when the legislature separated forcible rape and statutory rape into separate sections in 1994 and fashioned separate punishment provisions for each, it intended that forcible rape and statutory rape constitute *separate* and independent crimes with *separate* punishments." *Id.* at 412. "Further, it is well established that '*age* is the essential element in statutory rape, and the intent of the perpetrator and the consent of the victim are irrelevant.'" *Id*. (quoting *State v. Thompson*, 361 S.W.3d 46, 50 (Mo. App. W.D. 2011)). "Forcible rape, on the other hand, requires forcible compulsion as its essential element, meaning either '[p]hysical force that overcomes reasonable resistance' or '[a] threat, express or implied, that places a person in reasonable fear of death, serious physical injury or kidnapping of such person or another person[.]'" *Id*. (quoting § 556.061(12)). "Forcible sex crimes require an element of physical force or threat that is simply not required for a . . . statutory

18

rape conviction . . . ." *Id.* Rather, the mere act of an individual engaging in sexual intercourse with someone under the statutorily designated age, absent any physical force or threat, constitutes first-degree or second-degree statutory rape. *Id.* "Accordingly, circumstances constituting a [second-degree] statutory rape conviction do not automatically satisfy the necessary requirements for a forcible rape conviction." *Id.*

Because the history of the sodomy statute corresponds with the history of the rape statute, the foregoing analysis applies equally to the legislative separation of sodomy and statutory sodomy.[7] As with rape and statutory rape, the legislature intended that sodomy and statutory

---

[7] Prior to 1994, the sodomy statute provided:

1. A person commits the crime of sodomy if he has deviate sexual intercourse with another person without that person's consent by the use of forcible compulsion.

2. Forcible sodomy or an attempt to commit forcible **sodomy** as described in subsection 1 of this section or sodomy as described in subsection 3 of this section is a felony for which the authorized term of imprisonment, including both prison and conditional terms, is life imprisonment or a term of years not less than five years, unless in the course thereof the actor inflicts serious physical injury on any person, displays a deadly weapon or dangerous instrument in a threatening manner or subjects the victim to deviate sexual intercourse or sexual intercourse with more than one person, in which cases forcible sodomy or an attempt to commit forcible sodomy is a class A felony.

3. A person commits the crime of sodomy if he has deviate sexual intercourse with another person to whom he is not married who is less than fourteen years old.

§ 566.060 RSMo Cum. Supp. 1993. In 1994, the legislature separated forcible sodomy and statutory sodomy into separate sections and fashioned separate punishment provisions for each. Section 566.060 was amended to provide:

1. A person commits the crime of forcible sodomy if he has deviate sexual intercourse with another person by the use of forcible compulsion.

2. Forcible sodomy or an attempt to commit forcible sodomy is a felony for which the authorized term of imprisonment is life imprisonment or a term of years not less than five years, unless in the course thereof the actor inflicts serious physical injury or displays a deadly weapon or dangerous instrument in a threatening manner or subjects the victim to sexual intercourse or deviate sexual intercourse with more than one person, in which case the authorized term of imprisonment is life imprisonment or a term of years not less than ten years.

§ 566.060 RSMo 1994. New sections 566.062 and 566.064 were enacted. Section 566.062 provided:

1. A person commits the crime of statutory sodomy in the first degree if he has deviate sexual intercourse with another person who is less than fourteen years old.

2. Statutory sodomy in the first degree is a felony for which the authorized term of imprisonment is life imprisonment or a term of years not less than five years, unless in the course thereof the actor

sodomy "constitute *separate* and independent crimes with *separate* punishments." *See id*. As with rape ("A person commits the offense of rape in the first degree if he or she has sexual intercourse with another person who is incapacitated, incapable of consent, or lacks the capacity to consent, or by the use of forcible compulsion." § 566.030.1), sodomy requires forcible compulsion as its essential element ("A person commits the offense of sodomy in the first degree if he or she has deviate sexual intercourse with another person who is incapacitated, incapable of consent, or lacks the capacity to consent, or by the use of forcible compulsion." § 566.060.1), while age is the essential element in statutory sodomy ("A person commits the offense of statutory sodomy in the first degree if he or she has deviate sexual intercourse with another person who is less than fourteen years of age." § 566.062.1; "A person commits the offense of statutory sodomy in the second degree if being twenty-one years of age or older, he or she has deviate sexual intercourse with another person who is less than seventeen years of age." § 566.064.1).

Rape in the second degree is specifically denominated by statute as a lesser-included offense of rape in the first degree, just as sodomy in the second degree is specifically denominated by statute as a lesser-included offense of sodomy in the first degree. Second-degree statutory rape is not specifically denominated by statute as a lesser degree of first-degree rape, and statutory sodomy is not specifically denominated by statute as a lesser degree of sodomy.

---

inflicts serious physical injury on any person, displays a deadly weapon or dangerous instrument in a threatening manner, subjects the victim to sexual intercourse or deviate sexual intercourse with more than one person, or the victim is less than twelve years of age, in which case the authorized term of imprisonment is life imprisonment or a term of years not less than ten years.

§ 566.062 RSMo 1994. Section 566.064 provided:

1. A person commits the crime of statutory sodomy in the second degree if being twenty-one years of age or older, he has deviate sexual intercourse with another person who is less than seventeen years of age.

2. Statutory sodomy in the second degree is a class C felony.

§ 566.064 RSMo 1994.

We conclude that the trial court did not err, plainly or otherwise, in refusing to submit Hedges's proffered instructions. Therefore, Points VI, VII, VIII, and IX are denied.

## Conclusion

The trial court's judgment is affirmed.

/s/ *Mark D. Pfeiffer*

Mark D. Pfeiffer, Judge

Lisa White Hardwick, Presiding Judge, and Alok Ahuja, Judge, concur.

21