**Dwayne ROYSTON, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. WD 53703.

Missouri Court of Appeals,
Western District.

July 15, 1997.

Rebecca L. Kurz, Assistant Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Breck K. Burgess, Assistant Attorney General, Jefferson City, for respondent.

Before LAURA DENVIR STITH, P.J.,
and BRECKENRIDGE and HANNA, JJ.

LAURA DENVIR STITH, Judge.

In his sole point on appeal Mr. Royston argues that the trial court erred in denying his Rule 24.035 motion for post-conviction relief without an evidentiary hearing. We agree and remand for such a hearing.

## I. FACTUAL BACKGROUND

Mr. Royston was charged with two counts of drug trafficking. The first count arose out of the search of a residence which Mr. Royston alleges was owned by his mother and was rented to a Michael Adams. The police found over six grams of cocaine in the residence during the search. Mr. Royston was present in the house at the time of the search and was arrested and charged with drug trafficking. Mr. Royston states that he was in the house at the time the police conducted a search only in order to repair a broken light fixture, that he did not live in the house, and that the drugs belonged to Mr. Adams, not to him.

Mr. Royston asserted in support of his post-conviction motion that after he was arrested he retained attorney Bruce Anderson to represent him. He said that he and Michael Adams went to Mr. Anderson's office and Mr. Adams signed an affidavit admitting he leased the searched residence and that any drugs there belonged to him or his friends, not to Mr. Royston. Mr. Royston later retained a new attorney, John Humphrey. He alleges that he gave the Adams affidavit to Mr. Humphrey and told him where Mr. Adams lived, but that Mr. Humphrey failed to investigate Mr. Adams.

Mr. Royston was also charged with drug trafficking based on an incident in which the police alleged he threw a baggie of cocaine on the ground as the police approached him and a group of other men standing on the street. Mr. Royston claimed he provided Mr. Humphrey with the names of several men whom he said witnessed his arrest and could testify that he did not throw down a baggie of

cocaine. He alleges Mr. Humphrey did not investigate this defense or attempt to interview these witnesses.

Mr. Royston alleges that Mr. Humphrey had told him that he would receive only probation. Two days before trial, he alleges, Mr. Humphrey for the first time told him that he could not work out a plea agreement for probation, and that they would be going to trial unless he accepted an agreement for 12 years on each count, to run concurrently with each other and with the 10 year sentence he would have to serve on a prior conviction for which probation would be revoked because of his commission of the two new offenses.

Mr. Royston alleges in his 24.035 motion that he agreed to this plea only because he knew that Mr. Humphrey had done nothing to investigate the two defenses to the two counts against him, had failed to interview witnesses, and was unprepared for trial. The trial court rejected Mr. Royston's contentions without an evidentiary hearing, stating:

> The general rule is that by pleading guilty a movant waives his right to complain about counsel's failure to investigate, *Townsend v. State,* 854 S.W.2d 496, 497 (Mo.App. E.D.1993). As in *Townsend,* movant admitted his guilt to all the charges, assured the court that no one had threatened or coerced him into pleading guilty and said he had no complaints about counsel's representation.... Based on the foregoing, movant cannot now claim that counsel was ineffective based on the above listed grounds.

Mr. Royston appeals, asserting that the trial court erroneously held that a defendant waives his right to complain about a failure to investigate simply by pleading guilty.

## II. LEGAL ANALYSIS

In reviewing this ruling, we are limited to determining whether the motion court's findings of fact and conclusions of law were clearly erroneous. Rule 24.035(k); *Wilson v. State,* 813 S.W.2d 833, 835 (Mo. banc 1991). Findings and conclusions are clearly erroneous only if, after a review of the entire record, we are left with the definite and firm impression that a mistake has been made. *Id.,* 813 S.W.2d at 835. The appellant has the burden of proving that the findings and conclusions were clearly erroneous. *State v. Nolan,* 872 S.W.2d 99, 104 (Mo. banc 1994).

### A. Applicable Legal Standards

We do not agree with appellant that the motion court held that a guilty plea waives claims of failure to investigate even in those few instances in which the failure to investigate made the guilty plea involuntary. The court below simply noted that *Townsend* states, "*Generally,* the entry of a plea of guilty waives any future complaint a movant may have about plea counsel's failure to investigate movant's case." 854 S.W.2d at 497 (emphasis added). The court below did not deny that *Townsend* also states that claims of ineffective assistance of counsel are still cognizable to the extent "they affect the voluntariness and understanding with which the plea of guilty was made." *Id.* Rather, the court below simply found that the record below conclusively refuted the idea that the failure to investigate made the plea involuntary, based on the facts that at the guilty plea hearing Mr. Royston "admitted his guilt to all the charges, assured the court that no one had threatened or coerced him into pleading guilty and said he had no complaints about counsel's representation." The court below believed that these admissions were conclusive and prevented Mr. Royston from later claiming that he was not guilty or that counsel was inadequate in failing to investigate witnesses and defenses. It is the correctness of the latter ruling which is now before us.

Since *Townsend* was decided, the Missouri Supreme Court specifically addressed the issue of when a record will be found sufficient to conclusively refute a claim of ineffective assistance of counsel in *State v. Driver,* 912 S.W.2d 52 (Mo. banc 1995). Ms. Driver claimed in a 29.15 motion, following a jury trial, that counsel was ineffective in failing to investigate her claim that she had a concussion and suffered from a disease which would explain her conduct in leaving the scene of an accident. She said that she gave counsel the name and location of medical experts whom

he could call and that her medical records should have been introduced. She asserted that this evidence, if introduced, could have resulted in her acquittal.

The *Driver* motion court denied Ms. Driver's 29.15 motion without an evidentiary hearing on the basis that her claims were conclusively refuted by the following exchange which had occurred at the 29.07 inquiry during sentencing proceedings:

> Q: At this time I want to ask you if you have any complaints against your attorney, the Public Defender's office in this case?
>
> A: No, sir.
>
> Q: You think they did you a good job?
>
> A: Yes, I do.
>
> Q: Did they do anything that you didn't want them to do?
>
> A: No.
>
> Q: Did they do everything you wanted them to do?
>
> A: Yes, sir.

Our Supreme Court held that Ms. Driver had alleged facts which, if true, would have warranted relief, and that while her responses to the above questions were certainly relevant to the credibility of her later claim of ineffective investigation, they were not adequate to conclusively refute those claims without an evidentiary hearing, stating:

> To preclude an evidentiary hearing, however, the Rule 29.07(b)(4) inquiry must be specific enough to elicit responses from which the motion court may determine that the record refutes conclusively the allegation of ineffectiveness asserted in the Rule 29.15 motion. Responses to questions such as whether the trial attorney did everything that the defendant wanted him to do, or, conversely, did not do anything that the defendant did not want him to do, are too broad to refute conclusively an ineffectiveness claim such as the one alleged by Driver so that the motion court

may deny the Rule 29.15 motion without an evidentiary hearing. It is not enough that the defendant "would have known" of the claim during the sentencing proceeding.

*Driver,* 912 S.W.2d at 55–56.

While *Driver* concerned a Rule 29.15 motion following jury trial, later decisions have applied it to Rule 24.035 motions following entry of a plea of guilty. *Summers v. State,* 934 S.W.2d 563 (Mo.App.1996); *Bauer v. State,* 926 S.W.2d 188 (Mo.App.1996); *May v. State,* 921 S.W.2d 85, 88–89 (Mo.App.1996); *Van v. State,* 918 S.W.2d 921 (Mo.App.1996). Of course, as *Driver* itself noted, the trial court usually conducts a more detailed inquiry at guilty plea hearings than at a 29.07(b)(4) hearing, and thus the guilty plea hearing transcript is more likely to contain detailed responses which may conclusively refute later claims of ineffective assistance of counsel. *Driver,* 912 S.W.2d at 56.[1] Where this is not the case, however, then the post-conviction court should grant a 24.035 movant an evidentiary hearing.

### B. Application to This Case

*Driver* is applicable here. The record of the guilty plea hearing shows the following exchange occurred when the court asked Mr. Royston about his representation by counsel:

> Q: But in the three cases that we're here this morning, the guilty pleas, he's represented in all three of those cases?
>
> A: Yes.
>
> Q: Has he done everything you've asked him to do in connection with those cases?
>
> A: Well, I guess to the best of his ability, your Honor.
>
> Q: Well, are you satisfied with his representation of you in these cases?
>
> A: Well, he said he got me the best plea I could get, so I guess so.

---

1. Indeed, in *May,* 921 S.W.2d at 88–89, this Court set out a series of specific questions which we encouraged courts to ask during guilty plea hearings or 29.07(b)(4) hearings which, if answered affirmatively, would conclusively refute later claims of failure to investigate. This included questions such as whether defense counsel investigated the case to defendant's satisfaction, whether they talked to the witnesses defendant told them about, and whether they answered the questions defendant asked of them. *Id.* at 88.

Q: In other words, you have no complaints with regard to the representation of you that he's done?

A: No.

Q: Have you had any alcohol or drugs or medication in the last 48 hours?

A: No, I haven't, your Honor.

Q: Is your head clear today?

A: Yes.

Q: Do you understand what you're doing today?

A: Yes.

Q: Are your guilty pleas voluntary on your part?

A: Not really.

Q: In other words, are you pleading guilty of your own free will?

A: Yes, I am.

Q: Has anyone threatened you in order to get you to plead guilty?

A: No.

Q: Have they threatened any member of your family or loved one in order to get you to plead guilty?

A: No.

Q: Has anyone made any promises to you in order to get you to plead guilty that aren't contained in the plea agreements involving these cases?

A: No.

Q: Is the decision to plead guilty rather than not guilty the result of negotiations that have gone on between your attorney and the State's attorney in this case?

A: Yes.

The record also shows equivocation by Mr. Royston as to the elements of the crimes to which he pleaded guilty. Specifically, when asked whether he possessed the cocaine found by the police when they searched his mother's house leased by Mr. Adams, the following occurred:

Prosecutor: What I'm asking you, it is alleged in the Information that you possessed six grams or more of cocaine base.

Defendant: No, I did not.

Prosecutor: So you're saying today you didn't possess six grams or more of crack cocaine?

Defendant: No. It was found in the house.

Prosecutor: Okay. Six grams or more of crack cocaine was found in your house, correct?

Defendant: Yes, it was.

Defense Counsel: And you knew it was in the house?

Defendant: Yes, I did.

Defense Counsel: And you know it's illegal?

Defendant: Yes, I did.

Defense Counsel: Is that what you were getting at?

Prosecutor: Did you possess it? Even though it wasn't on your body, you knew it was there; isn't that correct?

Defendant: Yes.

In other words, Mr. Royston admitted only that he knew the cocaine was in the house and that cocaine was an illegal substance. In regard to the second count of which Mr. Royston was convicted, the prosecutor similarly asked Mr. Royston whether he possessed two grams of cocaine, stating, "Again, by possess we mean having it on your person or having it within your reach and control." Mr. Royston answered "yes" to the question as qualified. None of these admissions are even inconsistent with his current claims that the cocaine found in the house belonged to Mr. Adams and the latter's friends and not to him, or with his claim that the baggie of cocaine found by the police was not thrown down by him.

Finally, at the end of the hearing, the court again addressed the defendant as follows:

Q: All right. Do you have any questions about the—what's going on here today?

A: I really don't know. I'm kind of in a daze.

Q: Have you had ample time to discuss this case with your family?

A: No.

Q: Have you had ample time to discuss this case with your attorney?

A: Yes.

Without further questioning of Mr. Royston about his statements that he was dazed and that he had not had time to discuss the agreement with his family, the court accepted his guilty pleas and sentenced him to concurrent 12–year terms in accordance with the plea agreement.

We disagree with the motion court that this record was sufficiently specific to conclusively refute Mr. Royston's later claims that counsel was ineffective in failing to investigate witnesses identified by Mr. Royston. The court never asked Mr. Royston if counsel had interviewed the witnesses he was told about or whether an adequate investigation was conducted. When asked to admit the elements of the crime, Mr. Royston equivocated about his guilt and never in fact admitted possession of the drugs, much less drug trafficking.

Mr. Royston was also very equivocal even in answering the very general questions put to him about his satisfaction with counsel, understanding of the proceedings and the voluntariness of his plea. Thus, when asked if counsel had done everything asked of him, Mr. Royston did not answer yes, but rather stated, "Well, I guess to the best of his ability, your Honor." When the court followed up by asking, "Well, are you satisfied with his representation of you in these cases?", Mr. Royston answered, "Well, he said he got me the best plea I could get, so I guess so." When asked whether the plea was voluntary, he answered "Not really," and later said he was dazed and had not had a chance to discuss the plea with his family.

Certainly, Mr. Royston also said he had no complaint about his representation and that he was pleading guilty of his own free will and had not been threatened or made promises not on the record. Similar general statements were also made in *Driver*, however, and found insufficient to conclusively refute later claims of ineffective assistance of counsel. For this reason here, as in *Driver*, we do not believe the record can be said to conclusively refute appellant's current allegations that counsel failed to adequately investigate. *Cf. Moore v. State*, 685 S.W.2d 627, 628–29 (Mo.App.1985) (defendant's response that he must be satisfied with counsel's representation since he was pleading guilty did not conclusively refute later claim that he was not satisfied with representation).

For these reasons, we remand for an evidentiary hearing at which the court will consider the merits of Mr. Royston's claims find that his plea was unintelligent and involuntary.

All concur.