

# In the Missouri Court of Appeals
# Eastern District

### DIVISION THREE

| | | |
|---|---|---|
| JACOB T. SHEPARD, | ) | No. ED110167 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of Cape Girardeau County |
| v. | ) | Cause No. 21CG-CC00025 |
| | ) | |
| STATE OF MISSOURI, | ) | Honorable Scott A. Lipke |
| | ) | |
| Respondent. | ) | Filed: October 25, 2022 |

### Introduction

Jacob Shepard appeals from the circuit court's judgment denying his amended motion for postconviction relief under Rule 24.035 without an evidentiary hearing. Shepard argues that his attorney was ineffective for advising him to plead guilty even though he had a potential defense under the Good Samaritan Law, § 195.205, RSMo. Supp. 2021, because drugs he admittedly possessed were discovered only after he called authorities for medical assistance. Because Shepard's allegations are insufficient to state a claim for ineffective assistance of counsel and are refuted by the record, the circuit court did not clearly err in denying his motion without an evidentiary hearing.

**Factual and Procedural Background**

The State charged Shepard by information with one count of possession of a controlled substance. The probable cause statement supporting the information stated that Shepard called 911 for help because he believed that he was being followed. When officers arrived, they saw Shepard exhibiting paranoid behavior that they believed to be drug related. Shepard consented to be searched and then began removing items from his pockets and placing them on the hood of a police cruiser. When Shepard removed a pack of cigarettes from his pocket, he threw it toward the road rather than placing it with the rest of his belongings. Officers retrieved the package and discovered methamphetamine inside.

A little over a year after his arrest, Shepard pleaded guilty in exchange for the State's agreement to recommend a five-year prison sentence. During the plea colloquy, the circuit court questioned Shepard about the voluntary nature of his plea. Shepard testified that no one had promised him anything, threatened him, forced him, or coerced him to plead guilty. He assured the court that he understood he did not have to plead guilty, that he was entitled to proceed to trial, and that by pleading guilty he was waiving his constitutional rights relating to trial. Shepard told the circuit court that he was satisfied with his counsel's performance and that there was nothing his attorney would not do that Shepard wanted done. Shepard agreed that he had no complaints at all about his attorney's services.

The court also questioned Shepard about a Petition to Enter Plea of Guilty that Shepard had signed and filed with the court prior to the plea. In the petition, Shepard agreed that he: (1) had discussed the case with his attorney, (2) had told his attorney all of the facts and circumstances regarding the case, (3) committed the crime charged, and (4) was giving up a number of constitutional rights, including his right to present evidence and have a trial. He also agreed in the

2

petition that his attorney had "done all that anyone could do to counsel and assist me" and that he was satisfied with the advice of his counsel. At the hearing, the circuit court confirmed that Shepard read and understood the plea petition before signing it.

The court then asked Shepard to explain what he did that made him guilty of the charged crime. Shepard testified that he was in a bar parking lot and "called 911 for emergency services" and that, when the police arrived, there was methamphetamine in his general area, but he initially denied that the drugs were his. When the circuit court questioned Shepard's attorney about the denial, his attorney stated, "I believe there was an issue with his health. That's why the—his well-being. So that's why the police was [sic] called, why they were initially called." The court then stated it was having trouble with the factual basis of the plea and asked if Shepard wanted to speak to his attorney. After a brief conversation off the record, Shepard admitted that the drugs the police discovered were his.

Next, the court asked the prosecuting attorney to recite the facts the State would prove at trial. The prosecutor stated that the facts would be that "Shepard called the police because he believed people were following him." When they arrived on the scene, the police watched Shepard throw a package of cigarettes on the ground. Shortly thereafter, officers discovered methamphetamine in the cigarette package. Shepard agreed that the facts recited by the prosecutor sounded correct. The circuit court accepted Shepard's plea and sentenced him to the recommended five years in prison.

Shepard timely filed his pro se motion for postconviction relief under Rule 24.035. Appointed counsel filed an amended motion and request for an evidentiary hearing. In the amended motion, Shepard alleged that his attorney was ineffective for failing to properly advise Shepard that he was entitled to an immunity defense under § 195.205. Shepard also challenged the circuit

3

court's authority to convict him. In support of these claims, Shepard alleged that he called 911 "for help" because he was "pouring sweat and his chest was hurting." When officers arrived on the scene, he told them he had used methamphetamine and asked them to call an ambulance. As requested, the officers called an ambulance, which transported Shepard to the hospital for treatment.

Shepard alleged that he told his attorney several times that he believed that "his case fell under the Good Samaritan Law." According to Shepard, his attorney responded simply by telling him that it did not matter because he "was definitely going to prison in this case." Shepard also alleged that his attorney should have requested tapes of his 911 call and video from the responding officers' body-worn cameras as part of his investigation, though Shepard did not allege what those recordings would have shown. Finally, Shepard alleged that if his attorney had informed him that he was entitled to a defense under § 195.205, Shepard would have requested that this attorney file a motion to dismiss and would not have pleaded guilty. He alleged that his attorney's conduct "affected the voluntariness and knowledge with which [his] plea was made."

The circuit court denied Shepard's Rule 24.035 motion without an evidentiary hearing. This appeal follows.

**Standard of Review**

We review the denial of a Rule 24.035 motion for postconviction relief to determine whether the circuit court's findings and conclusions are clearly erroneous. Rule 24.035(k); *Hefley v. State*, 626 S.W.3d 244, 248 (Mo. banc 2021). Findings and conclusions are clearly erroneous if, after reviewing the entire record, there is a "definite and firm impression that a mistake has been made." *Hefley*, 626 S.W.3d at 248 (internal quotation marks and citation omitted).

4

**Analysis**

Section 195.205 provides a defense from prosecution for certain drug-related offenses, including possession of a controlled substance, to anyone "who is experiencing a drug or alcohol overdose or other medical emergency who seeks medical assistance for himself or herself." Section 195.205.2. If the evidence of the crime is obtained as a result of the person seeking medical assistance, the statute provides that the person "shall not be arrested, charged, prosecuted, convicted, or have his or her property subject to civil forfeiture[.]" *Id.* This Court recently held that § 195.205 is a defense to prosecution that the defendant bears the burden of pleading and proving. *State v. Gill*, 642 S.W.3d 356, 361 (Mo. App. E.D. 2022).

Generally, Shepard argues that his attorney failed to advise him that he was entitled to a defense under § 195.205. Shepard claims that he would not have pleaded guilty had he been aware that this defense applied to him. More specifically, Shepard alleges that his attorney was ineffective in three ways: for not filing a motion to dismiss under § 195.205 (Point I), for not further investigating that defense (Point II), and for advising him to plead guilty without further investigating the defense (Point III). Shepard also argues that the circuit court lacked authority to enter a conviction because Shepard was immune from prosecution under § 195.205 (Point IV).

We start with Shepard's claims of ineffective assistance of counsel. "To state a claim for ineffective assistance of counsel, the movant must allege facts demonstrating: (1) that counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney, and (2) that counsel's deficient performance actually prejudiced the movant." *McLemore v. State*, 635 S.W.3d 554, 559 (Mo. banc 2021) (internal quotation marks and citations omitted). "Prejudice exists where the movant shows that, but for counsel's ineffective assistance, he would not have pleaded guilty and would have insisted on taking his case to trial." *Starks v. State*, 636

S.W.3d 615, 620 (Mo. App. E.D. 2021). To be entitled to an evidentiary hearing on a postconviction motion, the movant must allege: (1) facts, not conclusions, warranting relief; (2) that are not refuted by the record; and (3) that result in prejudice to the movant. *Stanley v. State*, 420 S.W.3d 532, 544 (Mo. banc 2014). A hearing is not required when the motion, files, and record conclusively show the movant is not entitled to relief. *Id.*; Rule 24.035(h).

After a negotiated guilty plea, a claim of ineffective assistance of counsel is irrelevant except to the extent it affects the voluntariness and understanding with which the guilty plea was made. *Roberts v. State*, 276 S.W.3d 833, 836 (Mo. banc 2009). A guilty plea waives all claims of ineffective assistance that do not involve the voluntariness and understanding of the plea. *Meadors v. State*, 571 S.W.3d 207, 211 (Mo. App. E.D. 2019). To be voluntary, a plea must be free from fraud or mistake, misapprehension, fear, coercion, or "the holding out of hopes which prove to be false or ill founded." *Johnson v. State*, 580 S.W.3d 895, 901 (Mo. banc 2019) (internal quotation marks and citations omitted). To be knowingly made, a plea must be entered with "sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970).

Neither of Shepard's first two claims of ineffective assistance is directed to the voluntary or knowing nature of his guilty plea. Rather, those claims assert that his attorney failed to investigate and assert the defense provided by § 195.205. But by pleading guilty, Shepard gave up his right to assert defenses or go to trial. As a result, Shepard's claims regarding his attorney's failure to investigate or assert a defense under § 195.205, standing alone, were waived.[1] *See,e.g.*, *Meadors*, 571 S.W.3d at 211 (holding claim that counsel failed to file a motion to dismiss for

---

[1] We are mindful that claims of failure to investigate are still available after a guilty plea "to the extent they affect the voluntariness and understanding with which the plea of guilty was made." *Voegtlin v. State*, 464 S.W.3d 544, 553 (Mo. App. E.D. 2015) (citing *Royston v. State*, 948 S.W.2d 454, 455 (Mo. App. W.D. 1997)). We address Shepard's claims regarding this argument in our discussion of Point III.

violation of the right to speedy trial was waived by guilty plea); *Simmons v. State*, 100 S.W.3d 143, 146 (Mo. App. E.D. 2003) ("A guilty plea generally waives any future complaint the defendant might have about trial counsel's failure to investigate his case.").

Points I and II are denied.

Shepard's third claim of ineffective assistance of counsel, unlike his first two, implicates the voluntary and knowing nature of his guilty plea. Shepard alleged that his attorney was ineffective for advising him to plead guilty without informing him that he was entitled to a defense under § 195.205, and as a result, his plea was not knowing or voluntary. In his amended Rule 24.035 motion, Shepard alleged that his parole officer told him about § 195.205. Shepard alleged that he then told his attorney multiple times that he believed that "his case fell under" § 195.205, but his attorney told him it did not matter in his case. Finally, Shepard alleged that had he known "he had immunity from liability he would not have pled guilty but would have requested plea counsel file a motion to dismiss the charge against him."

We find that Shepard's claim fails for two reasons. First, taking all of the allegations of the amended motion as true, Shepard has not alleged facts showing that he received ineffective assistance of counsel. Second, Shepard's claim that he received ineffective assistance of counsel is also refuted by the record.[2]

The only allegation Shepard made regarding his attorney's advice is that his attorney told him that, regardless of the Good Samaritan Law, Shepard was "definitely going to prison in this case." Shepard asserts that this advice was erroneous because, assuming Shepard had a meritorious defense under the Good Samaritan Law, the *only* reasonable thing for his attorney to have done

---

[2] Even were Shepard's first two points not waived, they would be unsuccessful for the reasons set forth in this discussion of his third point.

7

was to file a motion to dismiss. Or, as alleged in Shepard's Rule 24.035 amended motion, his attorney had a "duty to file a motion to dismiss." The dissent agrees with this rationale. We do not.

A movant seeking postconviction relief "must overcome the strong presumption that trial counsel's conduct was reasonable and effective." *Watson v. State*, 520 S.W.3d 423, 435 (Mo. banc 2017). "To overcome this presumption, a movant must identify 'specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance.'" *Id.* (quoting *Zink v. State*, 278 S.W.3d 170, 176 (Mo. banc 2009)).

The primary deficiency in Shepard's allegations is that they did not address the range of circumstances facing Shepard's attorney in advising Shepard on whether he should plead guilty. Instead, they isolated only those factors suggesting a guilty plea was inadvisable and invite this Court to focus its attention on *only* those factors. However, this Court has previously recognized that defense counsel is faced with a multitude of considerations that must be weighed and evaluated in coming to the decision on whether to advise a client to plead guilty. *Thompson v. State*, 449 S.W.3d 53, 59 (Mo. App. W.D. 2014). "Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks." *Id.* (quoting *Premo v. Moore*, 562 U.S. 115, 124 (2011)).

In other words, whether a potentially applicable defense to a charge exists "is not counsel's only concern when advising a client whether to enter a guilty plea." *Id.* "Counsel's concern is the faithful representation of the interest of his client and such representation frequently involves highly practical considerations as well as specialized knowledge of the law." *Id.* (quoting *Tollett v. Henderson*, 411 U.S. 258, 268 (1973). Considerations such as the "prospect for plea bargaining, the expectation or hope of a lesser sentence, or the convincing nature of the evidence against the

accused" may suggest the advisability of a guilty plea, even if a potentially successful motion to dismiss is available. *Tollett*, 411 U.S. at 268 (as quoted in *Thompson*).

For this reason, to demonstrate that counsel was ineffective for advising the defendant to plead guilty, a defendant must show that the "advice to plead guilty itself, *in light of all the various considerations*, was incompetent." *Thompson*, 449 S.W.3d at 60 (emphasis added). To do so here, Shepard was required to show not only that there existed a meritorious defense under § 195.205, but also that his attorney's advice to plead guilty in light of that potential defense was "outside the range of competence demanded of attorneys in criminal cases." *Id.* at 59. (quoting *Tollett*, 411 U.S. at 268.

Shepard's amended motion focused solely on the first inquiry, whether he had a meritorious defense under the Good Samaritan Law. What Shepard and the dissent both ignore is that, at the time counsel advised Shepard to plead guilty, counsel was faced with significant evidence suggesting that the Good Samaritan Law did not apply. Specifically, the probable cause statement contained in the criminal case file,[3] which was signed by an arresting officer, indicated that officers were dispatched to the scene because Shepard called 911 "requesting officer's assistance due to believing that subjects were following him." Shepard confirmed this version of events at the plea colloquy when he agreed with the prosecutor's recitation of the facts, including that "Shepard called the police because he believed people were following him." Shepard's amended motion also stated that no ambulance was called until *after* the police arrived.

This is precisely the type of information that this Court and the United States Supreme Court have both identified as a consideration counsel must weigh in advising a client whether to plead guilty. *See Thompson*, 449 S.W.3d at 60; *Tollett*, 411 U.S. at 268 (noting that the strength of

---

[3] Under the clearly erroneous standard of review, we are required to review the entire record to determine if a mistake has been made by the circuit court. *Hefley*, 626 S.W.3d at 248.

9

the State's case is one consideration for the counsel in advising on a guilty plea). But this consideration is entirely unaddressed in Shepard's motion. As a result, for this Court to find that Shepard has sufficiently pleaded that he is entitled to relief, we would need to ignore this consideration entirely. Our role in evaluating the effectiveness of counsel's performance, however, is to view counsel's conduct from "counsel's perspective at the time and not from hindsight." *Cooper v. State*, 621 S.W.3d 624, 632 (Mo. App. W.D. 2021).

Viewing the record as we must, Shepard has failed to allege facts that warrant relief on ineffective assistance of counsel grounds. Though Shepard has pleaded that he called 911 because he was experiencing a medical emergency, the record—including Shepard's own testimony at the plea hearing—demonstrates that there was countervailing evidence that could easily cause a reasonably competent attorney to question the success of a motion to dismiss based on the Good Samaritan Law. Moreover, as the dissent points out, there is little case law interpreting § 195.205. This, in turn, created uncertainty for Shepard's attorney as to the applicability of the law, particularly, given that the unrefuted evidence in the record demonstrates that no ambulance was called until after the police arrived.[4] As a result, Shepard has failed to allege facts that allow us to find that no reasonably competent attorney would have advised Shepard to plead guilty on this record. *See Hill v. Lockart*, 474 U.S. 52, 62 (1985) (holding that a criminal defendant must allege that counsel's representation fell below an "objective standard of reasonableness" to be entitled to relief on ineffective assistance of counsel grounds). This is particularly true given that Shepard's attorney entered into a plea deal in which Shepard received a lower sentence than the maximum.

---

[4] We make no holding regarding whether the Good Samaritan Law would apply in such a case. Our holding in this case is limited entirely to whether Shepard's unrefuted allegations would entitle him to relief on the grounds that his attorney was ineffective.

10

The record also demonstrates that Shepard was a candidate for sentencing enhancement as a persistent offender, which did not occur in this case.

The dissent's analysis treats this case as if it were brought via a Rule 29.15 motion after a trial. In such a case, Shepard's allegations would likely be sufficient to suggest that his attorney was ineffective for failing to file a motion to dismiss under the Good Samaritan Law. But for a Rule 24.035 motion after a guilty plea, the question is not limited to whether there was a meritorious defense that counsel failed to advance. The question is whether counsel's allegedly incompetent advice rendered Shepard's plea unknowing or involuntary. We disagree with the dissent that Shepard's allegations are sufficient to demonstrate his attorney improperly advised him regarding the applicability of the Good Samaritan Law.

At best, Shepard's allegation amounts to a complaint that, if his attorney had given him a different assessment of the State's case, he would not have pleaded guilty. But "it is precisely the duty of counsel to advise his client of the strength of the State's case," and "[t]he fact that such advice was that the State's case was strong, or that [the defendant's] conviction was likely, does not vitiate the plea of guilty." *Whitehead v. State*, 481 S.W.3d 116, 126 (Mo. App. E.D. 2016) (internal quotation marks and citations omitted) (rejecting a movant's argument that his attorney's advice that he would lose at trial and had no other option but to plead guilty constituted coercion).

Given our standard of review, and keeping in mind the precedent discussed, we hold that Shepard has not sufficiently alleged that his attorney's advice was so defective as to render his guilty plea unknowingly or involuntarily entered. Shepard focuses his argument on only one point: that he was entitled to a defense under the Good Samaritan Law. In doing so, he ignores the myriad other considerations that defense counsel must make in advising a client to plead guilty. It may be that counsel made no other considerations, but Shepard has not alleged that to be the case. We do

11

not mean to suggest by our holding that counsel may never be ineffective for advising a client to forgo a potentially meritorious motion simply due to the existence of countervailing evidence. But on this record, and in light of all of the relevant considerations, Shepard's allegations are insufficient.

We also find that Shepard's claim that his attorney should have done more to investigate the defense before advising him to plead guilty unavailing. Shepard's amended motion argues that counsel should have obtained a recording of the 911 call and footage from the body camera worn by a responding officer. However, Shepard did not allege what this evidence would have shown and how it would have aided his defense. These are necessary allegations. *January v. State*, 908 S.W.2d 169, 170 (Mo. App. E.D. 1995).

Shepard's claim also fails because his allegations that counsel was ineffective are refuted by the record. First, Shepard's allegations in the amended motion are self-contradictory. Shepard alleged that he believed that the Good Samaritan Law applied to his case and discussed it with his attorney while simultaneously alleging that, had he known that the defense applied to his case, he would not have pleaded guilty and would have insisted that his attorney file a motion to dismiss. These statements cannot both be true. Taking all of Shepard's allegations as true, the record demonstrates that Shepard learned about the defense, believed that he fell within its provisions, but decided to plead guilty nonetheless. This record refutes not only Shepard's allegation that he pleaded guilty without knowing that his case fell under the immunity statute, but also his allegation that he would have insisted that his attorney file a motion to dismiss rather than plead guilty.

Second, Shepard's testimony at the plea colloquy also refutes his allegations of ineffective assistance. Shepard was given the opportunity to inform the circuit court that his attorney had not pursued a §195.205 defense to his satisfaction when he was directly asked if there was "anything

12

that [counsel] would not do that you asked him to do?" Shephard said "no" and repeatedly assured the circuit court he was satisfied with counsel's representation. He gave those answers even though Shepard believed *at the time he pleaded guilty that the immunity defense applied to his case and that counsel had done nothing to pursue that defense*. This is not a situation in which a defendant merely made non-specific statements that he was satisfied with his attorney's performance. *See Ryan v. State*, 547 S.W.3d 151, 156 (Mo. banc 2018) ("[F]actual statements made by the defendant in the sentencing proceeding may later refute certain claims of ineffective assistance of counsel so long as the question asked and the responses to them [were] specific enough to refute conclusively the movant's allegations." (internal quotation marks and citation omitted)). Contrary to the dissent's conclusion about the record, we find that the circuit court's specific questions should have prompted the complaint he raises now.

Third, the plea petition that Shepard filed prior to pleading guilty also refutes his allegations. The petition stated that Shepard had been counseled on all the possible defenses he may have and that he believed that his lawyer has done all that anyone could do to counsel and assist him. It affirmed in all capital letters that Shepard was "satisfied with the advice and help [counsel] has given me." Shepard signed the plea petition and affirmed that he had read and understood it during the plea colloquy.

Finally, we do not disagree with the dissent that circuit courts have broad discretion to hold an evidentiary hearing in these types of cases and, when in doubt, should err on the side of having a hearing. In fact, a circuit court can never commit reversible error by having an evidentiary hearing. But the question for us on appeal is not whether we would have followed the admonition to "just have a hearing" if we were the circuit court, but whether the circuit court clearly erred in not having one. It is the movant's burden in the circuit court to allege facts entitling the movant to

relief that are not refuted by the record—even though it is "incomplete," as the dissent calls it—and the movant's burden on appeal to demonstrate that it was clearly erroneous not to have a hearing on those facts. Shepard did not meet those burdens in this case. On this record and these allegations, we are not left with the definite and firm impression that the circuit court erred in denying Shepard's motion without an evidentiary hearing. Even taking all of Shepard's properly pleaded allegations as true, the record does not demonstrate that Shepard received ineffective assistance of counsel that rendered his guilty plea unknowing and involuntary. Shepard's own allegations demonstrate that he was aware of the Good Samaritan Law and believed it to be applicable, but opted to plead guilty, thereby refuting any allegation that if he had known of that defense, he would not have pleaded guilty and instead would have insisted that his attorney file a motion to dismiss.

We also find the dissent's discussion, via footnote, of the purposes behind the Good Samaritan Law to be out of place in this case. This case does not involve the merits and policy considerations underlying the legislature's passage of the Good Samaritan Law. Our role is to interpret laws, not to determine whether their passage is good or bad policy. The only question presented by this case, and the only one we answer, is whether Shepard sufficiently alleged that he received ineffective assistance of counsel when he was advised to take a plea deal. As set forth above, we hold that he did not.

Point III is denied.

In Shepard's final point on appeal, he argues that the circuit court lacked authority to enter a conviction because Shepard was entitled to immunity under § 195.205. Shepard argues that the language used in § 195.205 stating that a person "shall not be arrested, charged, prosecuted, convicted, or have his or her property subject to civil forfeiture" divests the court of authority to

14

convict him of possession of methamphetamine in violation of § 579.015. Shepard argues that the circuit court lacked authority to accept his guilty plea because the court was aware of facts surrounding the purpose of his 911 call suggesting that he was seeking medical assistance for an overdose or other medical emergency.

Generally, a voluntary guilty plea waives all "non-jurisdictional" defects and defenses, including all statutory and constitutional guaranties. *Feldhaus v. State*, 311 S.W.3d 802, 804-5 (Mo. banc 2010) (internal quotation marks and citations omitted). Shepard's argument suggests, somewhat confusingly, that the circuit court lacked either subject matter jurisdiction or authority to enter the conviction in this case as a result of § 195.205. The Supreme Court of Missouri, in *Webb v. Wysciskalla*, 275 S.W.3d 249, 253 (Mo. banc 2009), made clear that Missouri's circuit courts have subject matter jurisdiction over criminal cases under article V, section 14 of the Missouri Constitution. *State ex rel. Laughlin v. Bowersox*, which Shepard cites for the proposition that a court cannot enter a conviction if it has no jurisdiction to do so, held only that the Missouri General Assembly could not "grant subject matter jurisdiction to its courts for cases that are within the exclusive jurisdiction of the federal courts." 318 S.W.3d 695, 701 (Mo. banc 2010). Because this case involves only the criminal laws of Missouri, there is no question that the circuit court had the subject matter jurisdiction necessary to enter a conviction.

The next question then is whether § 195.205 divests the circuit court of authority to enter a conviction in any case where it applies or whether it is a statutory defense that can be waived by a guilty plea. This Court has already determined that the language of § 195.205, when read in conjunction with §§ 579.015 and 579.180, demonstrates the legislature's intent to create a defense to prosecution that must be pleaded and proven by the defendant. *State v. Gill*, 642 S.W.3d 356, 360-61 (Mo. App. E.D. 2022).

15

In cases involving similar defenses, Missouri courts have held that the defenses may be waived by a guilty plea and do not divest a circuit court of authority to enter a conviction. *See Longhibler v. State*, 832 S.W.2d 908, 911 (Mo. banc 1992) (holding that the statute of limitations is "non-jurisdictional" and is waived by a voluntary guilty plea); *Schmidt v. State*, 292 S.W.3d 574 (Mo. App. S.D. 2009) (holding that compliance with uniform detainer law is "non-jurisdictional" and can be waived).

Shepard has not demonstrated a meaningful difference between the types of defenses found to be waivable in cases like *Longhibler* and the defense under § 195.205. Section 195.205 places the burden of persuasion on the defendant. *Gill*, 642 S.W.3d at 361. If the defendant opts to plead guilty rather than pursue the defense, then the defense is waived. There is nothing in the statutory language that supports Shepard's argument that the circuit court has an independent duty to investigate the circumstances of the offense to determine if § 195.205 applies. The circuit court did not clearly err in denying relief on this ground.

Point IV is denied.

## Conclusion

For the foregoing reasons, the circuit court's judgment is affirmed.

_____
John P. Torbitzky, J.

Cristian M. Stevens, J., concur.
Gary M. Gaertner, Jr., P.J. dissents in
a separate opinion.

16


<u>DIVISION THREE</u>

JACOB T. SHEPARD,          )   ED110167

         Appellant,        )   Appeal from the Circuit Court

                               )   of Cape Girardeau County

v.                                 )   Cause No. 21CG-CC00025

                               ) 

STATE OF MISSOURI,       )   Honorable Scott A. Lipke

                               )

         Respondent.      )   Filed:   October 25, 2022

<u>DISSENT</u>

I respectfully dissent. Our focus in this case is not on such far-reaching questions as whether Movant's plea should be vacated, whether the Good Samaritan Law applies, or even whether Movant's counsel actually was ineffective. Rather, we determine only whether the motion court should hold a simple evidentiary hearing to consider the limited issue of whether Movant's factual allegations are actually true. Movant alleged that he met the criteria for immunity under the Good Samaritan Law[1] but that he pled guilty based on counsel's erroneous advice that he was going to prison regardless of the Good Samaritan

---

[1] Section 195.205, RSMo. Supp. 2017. Subsection 2 states, in relevant part, "[A] person experiencing a drug or alcohol overdose or other medical emergency who seeks medical assistance for himself or herself or is the subject of a good faith request shall not be arrested, charged, prosecuted, convicted, . . . or otherwise be penalized for the following if the evidence for the arrest, charge, prosecution, conviction, seizure, or penalty was gained as a result of seeking or obtaining medical assistance: (1) Committing a prohibited act under section 579.015; . . . or (4) Violating probation or parole." Movant pled guilty to possession of a controlled substance under Section 579.015, RSMo. 2016. The record reflects he was also on parole at the time.

Law.  Our analysis is narrowed to evaluating whether these allegations warrant relief so long as they are not conclusively refuted by the record.  Rule 24.035(h).

My main complaint with the majority's opinion is its departure from this simple analysis in two key ways: (1) the majority concludes the record refutes Movant's claim by focusing only on evidence contradicting Movant's factual allegations concerning his 911 call and ignoring evidence in the record supporting Movant's allegations; and (2) rather than evaluating whether the alleged advice Movant's counsel gave was erroneous and would entitle Movant to relief, the majority assumes counsel actually advised Movant to plead guilty because the Good Samaritan Law likely did not apply, and then concludes *that* advice was reasonable.

First, there are three statements in the transcript of Movant's guilty plea that support Movant's allegations that he called 911 due to a medical emergency: (1) when asked by the plea court what happened, Movant stated, "I was in the bar parking lot and I called 911 for emergency services"[2]; (2) Movant's plea counsel, during Movant's guilty plea, told the court, "I believe there was an issue with [Movant's] health . . . his well-being.  So that's why the police [were] called, why they were initially called"; and (3) thereafter the court asked Movant, "So as I suggested before, perhaps you dropped [the methamphetamine at issue] there before the *medical personnel* arrived?" (emphasis added), to which Movant responded, "Yeah."  Thus, while there is also some evidence to contradict Movant's allegations, as noted by the majority, by no means does the record conclusively refute them.  None of the evidence supporting Movant's allegations enters the majority's analysis.  In effect, the majority weighs the evidence in favor of the statements contradicting Movant's

---

[2] While I acknowledge this statement does not specify a medical emergency, it certainly supports such a conclusion.  At the very least, it does not refute Movant's allegations.

2

allegations and accordingly finds the record refutes Movant's claim. This is not how the Court of Appeals functions, rather, this is the motion court's duty and lone responsibility. Inconsistency in the record, as here, is precisely why Rule 24.035 provides for evidentiary hearings. See Wilkes v. State, 82 S.W.3d 925, 928 (Mo. banc 2002) ("An evidentiary hearing may only be denied when the record *conclusively* shows that the movant is not entitled to relief").

Second, our analysis under Rule 24.035 requires us to examine the factual allegations in Movant's motion and determine whether, if true, *such allegations* warrant relief. See Roberts v. State, 276 S.W.3d 833, 835 (Mo. banc 2009). Movant's specific claim was that his attorney was ineffective for advising him to plead guilty based on counsel's assessment that the Good Samaritan Law "didn't matter, because [Movant] was definitely going to prison in this case." If Movant's allegations regarding his 911 call are true, Movant's attorney's alleged advice was objectively incorrect: Movant's call for medical help after recently using methamphetamine meant the Good Samaritan Law applied and would have provided Movant complete immunity from prosecution.[3] However, conspicuously absent from the majority opinion is any analysis of counsel's specific advice that the law did not matter because Movant was going to prison regardless.

---

[3] Moreover, the statute does not specify whether a drug overdose or other medical emergency must be the sole reason for seeking emergency assistance. While no court has yet determined whether Section 195.205.2 merits broad or strict construction, this Court has previously likened it to remedial or procedural laws, which are broadly construed. See State v. Vaughn, 648 S.W.3d 117, 121 (Mo. App. E.D. 2021); see also Holtcamp v. State, 259 S.W.3d 537, 540 (Mo. banc 2008) (remedial statutes given broad effect to effectuate purpose of legislature, so as to meet cases clearly within spirit or reason of law). This law went into effect in 2017, joining laws in most states across the country meant to address the scourge on our society due to drug-overdose deaths, which exceeded 100,000 in 2021 and affects all sectors of society. *Drug Overdose Deaths in the U.S. Top 100,000 Annually*, National Center for Health Statistics, https://www.cdc.gov/nchs/pressroom/nchs_press_releases/2021/20211117.htm (last visited Sep. 15, 2022). The law is meant to encourage both users and bystanders, who are present in more than half of these instances, id., to call for life-saving treatment without fear of penal repercussion. Movant's allegations that he recently used methamphetamine and was in physical distress, as well as his call to 911, if true, suggest he was exactly who the General Assembly had in mind in passing Missouri's Good Samaritan Law.

3

Rather, again focusing on the evidence in the record that would undermine Movant's factual allegations regarding his 911 call, the assumption underlying the majority's analysis is that counsel's actual advice was the Good Samaritan Law likely *did not apply* based primarily on the officers' probable cause statement,[4] and thus his advice to plead guilty to a lesser prison term was reasonable. It is entirely possible counsel gave this alternative version of advice, but in determining whether Movant has made a sufficient claim, our question is whether the *advice he alleged counsel gave* was reasonable.

Further, there is nothing in the record to support this alternative version beyond sheer inference from the probable cause statement viewed in isolation and the fact that counsel secured a plea deal with an unenhanced prison term. The transcript of Movant's plea actually supports Movant's allegations regarding counsel's advice: counsel's statement to the plea court that Movant called 911 for medical help supports Movant's argument that his attorney knew of factual circumstances that warranted application of the Good Samaritan Law. An assumed version of counsel's advice does not conclusively refute Movant's specific allegations.

Moreover, contrary to the majority's assertion that Movant's motion fails to address the considerations present when his counsel chose to advise Movant to plead guilty, Movant specifically alleged that he "anticipates plea counsel will have no reasonable explanation as to why he did not investigate whether [Movant] had immunity from liability

---

[4] The majority also refers to Movant's affirmation of the State's factual basis in the plea of guilty, but certainly this could not have been part of counsel's considerations in advising Movant prior to pleading guilty. Additionally, the majority makes much of the fact that no ambulance was called until after police arrived, but again, we consider Movant's allegation that he called for medical help as true when determining whether he is entitled to a hearing. The fact that the police called an ambulance after arriving bolsters Movant's claim that he was in medical distress, and there is no evidence in the record regarding what Movant said to the 911 dispatcher or whether the dispatcher sent police initially by mistake or by request. The record is undisputed that Movant required medical attention.

4

under Section 195.205 RSMo and why he advised him to plead guilty without conducting this investigation." Under such circumstances as Movant alleges, Movant's counsel is entitled to no presumption of reasonableness. Wiggins v. Smith, 539 U.S. 510, 521 (2003) (quoting Strickland v. Washington, 466 U.S. 668, 690-91 (1984)) (noting decisions that are "virtually unchallengeable" are those "made after thorough investigation of law and facts relevant to plausible options"); Kenley v. Armontrout, 937 F.2d 1298, 1304 (8th Cir. 1991) ("[S]trategy resulting from lack of diligence in preparation and investigation is not protected by the presumption in favor of counsel"). The majority's decision to defer to what they assume counsel's advice was while bypassing Movant's explicit allegations here disregards our standard of review. We need a hearing precisely because we do not know with certainty what counsel's strategy was, including the factual circumstances he considered and the advice he actually gave. Taking Movant's allegations at face value, as we must, Movant sufficiently claimed his counsel did not have a reasonable strategy,[5] and his claim is not conclusively refuted by the record.

Remarkably, the majority concedes Movant's allegations would "likely be sufficient to suggest that his attorney was ineffective for failing to file a motion to dismiss under the Good Samaritan Law" in the context of a Rule 29.15 motion. Rule 29.15 authorizes a motion "substantially identical to the motion authorized by Rule 24.035." Stanley v. State, 420 S.W.3d 532, 538 n.3 (Mo. banc 2014). The majority reiterates that under Rule 24.035, "[t]he question is whether counsel's allegedly incompetent advice

---

[5] This is true whether or not counsel's erroneous advice resulted additionally from a lack of investigation into the facts of Movant's 911 call, as Movant also alleges. Thus, while I disagree with the majority that Movant waived his claim of failure to investigate and that Movant's allegations in this respect are insufficient, I forego further analysis given that it is ultimately moot as Movant satisfied the requirements for a hearing on his claim that his counsel misadvised him regarding the Good Samaritan Law.

5

rendered [Movant]'s plea unknowing or involuntary." Movant alleged exactly that: "had plea counsel correctly advised him he had immunity from liability under Section 195.205[], [Movant] would not have pled guilty, but would have insisted on going to trial and filing a motion to dismiss the charge." These allegations directly fulfill the requirements of Strickland in the context of a guilty plea. See Stanley, 420 S.W.3d at 544 (movant must allege that but for the alleged errors, movant would not have pled guilty but would have insisted on going to trial). Moreover, the majority acknowledged as much when it noted Movant's third point "implicates the voluntary and knowing nature of his guilty plea." I fail to see how the majority makes such concessions and nevertheless finds Movant's claim insufficiently pled.

Finally, I disagree with the majority that (1) Movant's motion is self-refuting and (2) Movant's statements that he was satisfied with his attorney's performance refuted his claim that his attorney provided erroneous advice. The majority states Movant "alleged that he believed the Good Samaritan Law applied to his case and discussed it with his attorney while simultaneously alleging that, had he known that the defense applied to his case, he would not have pleaded guilty and would have insisted that his attorney file a motion to dismiss." Movant's specific allegation is if he had known "*he had immunity from liability*" (emphasis added), he would not have pled guilty. In essence, Movant alleges he initially thought he had immunity under the Good Samaritan Law, he asked his attorney about it, and his attorney told him he was wrong. Had he known he actually in fact had immunity, he would not have pled guilty. There is no contradiction here. Further, if Movant believed at the time of his guilty plea that his attorney answered his question about the applicability of the Good Samaritan Law correctly and further investigation of

6

his case was therefore fruitless, he would have had no complaint about his attorney at that time. Neither Movant's motion nor the record of his guilty plea indicates that he knew his attorney's advice was incorrect at the time of his plea.

I would find the motion court clearly erred in denying Movant's motion without an evidentiary hearing in that Movant's allegations as they stand would entitle him to relief and are not conclusively refuted by the record. This is not an automatic conclusion that Movant would succeed in vacating his plea. Rather, I would simply find Movant has made a claim that merits further investigation.[6] The Missouri General Assembly has clearly expressed an intent to prioritize the swift provision of life-saving treatment over conviction for drug offenses, and a hearing would allow the motion court to determine the reason for Movant's 911 call, the actual advice Movant's plea counsel gave, any strategy that went into Movant's ultimate decision to plead guilty, and accordingly whether such plea was in fact voluntary. Thus, I would find our standard of review requires us to reverse and remand for an evidentiary hearing. For the foregoing reasons, I respectfully dissent.

_____
Gary M. Gaertner, Jr., P.J.

---

[6] The late Judge Kenneth M. Romines, a crusty, seasoned, and conservative judge appointed by respected former Governor John D. Ashcroft, trained a very young new circuit judge in St. Louis County that it is a circuit judge's sole responsibility to hold PCR hearings in order to make a complete record to enable proper review by the Court of Appeals. Judge Romines' simple admonition was, "Just have a hearing." In many cases, without a hearing, appellate courts are left making assumptions regarding counsel's actions based on an incomplete record. While it is important in all cases to have a complete record, the importance is highlighted here, where the record contains conflicting information, and what is at stake is the application of a new law meant to keep people alive in drug overdose situations. I simply would find the motion court here must hold a hearing to enable proper review of this case. Godspeed Ken, August 13, 1942 – October 3, 2022.